H. P. FARIS, *Appellant*, v. GEORGE W. FINNUP,
*Appellee.*

No. 16,873.

SYLLABUS BY THE COURT.

1. NOTICE—*Grantee in Conveyance of Real Estate—Unrecorded Deed.* Under the statute providing that no conveyance of real estate shall be valid, except as between the parties and as to those who have actual notice, until it is deposited for record (Gen. Stat. 1909, § 1672), actual notice may be express when it consists of knowledge actually brought personally home, or it may be implied when it consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. In the latter case the known facts must be sufficiently specific to impose the duty to investigate further, and they must furnish a natural clue to the ultimate fact.

Faris v. Finnup.

2. ——— *Duty of Grantee to Give Notice of His Rights—Right of Purchaser Taking Warranty Deed.* The statute referred to casts upon the grantee in a deed the duty of giving notice of his rights to subsequent purchasers. Such a purchaser may assume the nonexistence of any instrument which has not been made valid against him by filing it for record, and before a purchaser taking a warranty deed can be deprived of the benefit of this assumption information that a prior deed is in fact outstanding and unrecorded must be quite definite and specific.

3. ——— *Same.* Under the evidence in this case it is held that a purchaser taking title by warranty deed did not have actual notice of a prior unrecorded deed.

Appeal from Finney district court. Opinion filed February 11, 1911. Affirmed.

*C. E. Vance,* and *B. F. Milton,* for the appellant.

*Albert Hoskinson,* and *R. W. Hoskinson,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The only subject involved in this appeal is that of actual notice of an unrecorded deed, under the act relating to conveyances of real estate, which reads as follows:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." (Gen. Stat. 1868, ch. 22, § 21, Gen. Stat. 1909, § 1672.)

T. C. Mitchell acquired title to the land in controversy by means of a tax deed, dated October 23, 1899, and recorded October 24, 1899. Mitchell quitclaimed to H. P. Faris on May 1, 1900. This deed was not recorded until October 25, 1904. On February 14, 1903, Mitchell conveyed the land to George Lynn Miller, the deed being recorded March 5, 1903. On July 8, 1904, Miller conveyed to George W. Finnup by a warranty deed, which was at once filed for record.

In an action of ejectment brought by Faris the trial court held that Finnup was entitled to the land because when he purchased he had no actual notice of the unrecorded deed from Mitchell to Faris. Faris appeals.

Three matters are relied on as affording actual notice of the appellant's unrecorded deed. In March, 1900, Mitchell brought suit against a large number of defendants, including the appellant, to quiet his title to a large number of tracts of land, including the one in controversy. On December 6, 1900, this suit was dismissed as to the appellant. The Mitchell deed to Miller was somewhat peculiar in form. It remised, released and quitclaimed Mitchell's interest in the land in controversy and thirty other quarter sections, and then provided as follows:

"The said parties of the first part, hereby warrant to the said party of the second part against all conveyances made by the said parties of the first part, to any of said lands to the amount of the purchase price paid for said land."

When the appellee purchased he knew of no outstanding interest, but he was told by Miller that the title was good except as to one quarter section, which had some little defect which he would have fixed in a few days or in a week or so. The particular quarter section was not specified.

Actual notice may be either express or implied; that is, it may consist of knowledge actually brought personally home, or it may consist of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. (*Pope v. Nichols,* 61 Kan. 230.) No claim of express notice to the appellee is made. Actual notice is implied only when the known facts are sufficiently specific to impose the duty to investigate further, and when such facts furnish a natural clue to the ultimate fact.

The appellee purchased upon a warranty of full title.

Consequently he was not put upon inquiry like one who accepts a quitclaim deed. (*Rich v. Downs,* 81 Kan. 43.) He could safely rely upon his vendor's warranty unless the public records disclosed the appellant's claim or unless cogent facts outside the records, duly brought to his attention, apprised him of it.

Miller's statement was so utterly indefinite that it directed attention to nothing. It purported to relate to some small matter easily remedied and not to something which went to the very foundation of the title. It opened no path leading to knowledge of any specific defect. Therefore no duty rested upon the appellee, in consequence of the remark, to look beyond the records and the facts suggested by possession. It is not pretended that the appellant ever held possession of the land.

The record of the suit to quiet title afforded no suggestion that the appellant might own the land in controversy. There is nothing to connect his name with any particular tract of the many described in the petition, and the fact of dismissal as to him indicates that he made no claim to any of it, and so was misjoined, as definitely as it indicates anything.

The appellee was required to take notice of facts appearing upon the face of recorded instruments in his grantor's chain of title. (*Knowles v. Williams,* 58 Kan. 221.) The deed from Mitchell to Miller covered many pieces of real estate, aggregating nearly 5000 acres. All of them were in fact conveyed. The collateral contract of warranty contained in the deed did not affect the character of the instrument as a conveyance. Nor did this contract admit that the grantor had made previous conveyances of any of the lands. It merely provided for a return of the consideration for any tract should a previous conveyance of it be produced.

What line of inquiry would such an instrument naturally suggest to a purchaser taking title under a

warranty deed? He would go to the office of the regis-
ter of deeds to see if any conveyances of his tract had
been made. Finding none, he would be assured that it
was not involved. He would not be required to find
Mitchell and interrogate him. The law casts the duty
upon the grantee in a deed to give notice of his right
to third persons, and not upon the grantor. Unre-
corded deeds are invalid as to subsequent purchasers
without information that they have been given, until
they are deposited with the register of deeds for rec-
ord. Such a purchaser may assume the nonexistence
of any instrument which has not been made valid
against him in this manner; and before a purchaser
taking a warranty deed can be deprived of the benefit
of this assumption information that a prior deed is in
fact outstanding and unrecorded must be quite definite
and specific.

The appellant cites a case in which a deed expressly
excepted and reserved from the grant lands which had
previously been conveyed. (*Adams v. Hopkins,* 144
Cal. 19.) The only question determined in respect to
that instrument was, however, the scope of the grant.
The question of notice was not passed upon, and it
was held that the words "previously conveyed" were
used in the sense of "previously sold."

The judgment of the district court is affirmed.

MASON, J., not sitting.

WEST, J. (concurring specially) : I concur in the re-
sult of the foregoing decision but can not assent to the
doctrine that from nothing something can be evolved.
It is held in this state that the grantee in a quitclaim
deed from his immediate grantor is put upon inquiry
by the very fact that it is a quitclaim, and this rule is
founded on common sense, and practical experience in
this state, in the western portion of which one's land
is often spoken of as so many "quarters" instead of so
many acres, and where real estate is handled very

Faris v. Finnup.

much as chattels are handled. Such grantor can convey no better title than he has; true, he may make a contract with his grantee that he will warrant and defend him against any outstanding title or equities, but this does not and can not increase the force of the conveyance itself or the estate actually passed thereby. Much confusion has arisen from failure to distinguish between a mere quitclaim and an instrument improperly called a quitclaim which amounts to an actual conveyance and passing of the estate itself.

The marrow of the matter is well stated in *Fountain v. Kenney,* 71 Kan. 642, where Mr. Justice Greene said:

"The determination of what equities are prior in right to the holder of the real estate under a quitclaim deed and whether they are held by persons in whose favor they should be enforced depends entirely upon the facts of each case."    (p. 646.)

The expression in *Rich v. Downs,* 81 Kan. 43, that one's rights are not affected by the fact that his grantor held under a quitclaim deed only, is the first clear attempt of this court to differentiate between the grantee in a quitclaim deed and subsequent grantees who take with notice thereof. Among the authorities cited in support of this expression is *Moelle v. Sherwood,* 148 U. S. 21, in which Mr. Justice Field said:

"Whether the grantee is to be treated as taking a mere speculative chance in the property, or a clear title, must depend upon the character of the title of the grantor when he made the conveyance; and the opportunities afforded the grantee of ascertaining this fact and the diligence with which he has prosecuted them will, besides the payment of a reasonable consideration, determine the *bona fide* nature of the transaction on his part."    (p. 30.)

If a grantee in a quitclaim deed from his immediate grantor is put upon notice and charged with a search for outstanding equities such as an ordinarily prudent man would be required to make, his grantee, who knows the sort of title the grantor has, must certainly

take with the same notice, and he should take with the same burden.   Otherwise one having no substantial claim whatever to a piece of real estate may execute a quitclaim deed therefor to B, and B, by making a warranty deed therefor to C, who has knowledge of the quitclaim, may make of C a *bona fide* purchaser, which B was not.

The object of the recording act is to protect those who deserve protection, but not to aid in what might be called larceny of real estate or in the manufacture of titles out of nothing.   A quitclaim grantee may act in perfectly good faith, but he, as well as his grantee, should be required to make reasonable inquiry as to what reason existed for making a quitclaim instead of a warranty deed.

It may as well be conceded that the numerical weight of modern authorities tends to support this peculiar distinction between immediate and subsequent grantees; but the reasoning of such decisions as *Carter v. Wise,* 39 Tex. 273, *Milam County v. Bateman,* 54 Tex. 153, *Schmidt v. Musson et al.,* 20 S. Dak. 389, and *Mason v. Black,* 87 Mo. 329, commends itself for its soundness.   In the latter may be found a quotation from Lord Hardwicke, which has lost none of its force by lapse of time:

" 'Where the purchaser can not make out a title but by a deed which leads him to another fact, the purchaser shall not be a purchaser without notice of that fact, but shall be presumed cognizant of it; for it is *crassa negligentia,* that he sought not after it.' " (p. 341.)