JOHANNE NORDMAN, *Appellee*, v. JACOB RAU *et al.* (S. A. WEBB, *Appellant*).

No. 17,260.

SYLLABUS BY THE COURT.

PUBLIC RECORDS—*Unacknowledged Mortgage—No Evidence of Title.* A conveyance which has not been acknowledged or proved so as to be entitled to record, but which has in fact been recorded in the office of the register of deeds, is void as to one who subsequently buys the land with actual knowledge of the contents of the record, if he is otherwise an innocent purchaser for value.

Appeal from Rush district court. Opinion filed December 9, 1911. Reversed.

*W. H. Vernon, W. H. Russell,* and *W. H. Vernon, jr.,* for the appellant.

*J. W. McCormick,* for the appellee.

The opinion of the court was delivered by

MASON, J.: Johanne Nordman brought an action to enforce her rights as to a tract of land under a mortgage given by Jacob Rau. S. A. Webb, a defendant,. claimed to·be the absolute owner of the land as an innocent purchaser without notice of the mortgage. Findings of fact were made to the effect that the mortgage was executed and in fact recorded in the office of

the register of deeds of the county where the land was situated, but was never acknowledged; that while matters were in this situation a personal judgment was rendered against Rau, an execution was issued and levied on the land as his property, and it was sold to Webb at a sheriff's sale, which was duly confirmed, and under which a deed was subsequently made to him; that the resident attorney who acted for Webb in bidding in the land at the sheriff's sale, knew of the existence and contents of the record of the unacknowledged mortgage. The trial court gave judgment for the owner of the mortgage, holding it to be valid as to Webb because his agent knew of the actual state of the record. Webb appeals.

The appellant argues that inasmuch as the attorney who bid in the land for Webb represented him only in that particular transaction and had no other connection with him, the knowledge of the agent was not equivalent to the knowledge of the principal. It fairly appears, however, that the attorney gained his knowledge of the state of the record after having been employed to attend the sale, and before bidding in the property, and that in this aspect of the matter the case falls within the rule that "a principal is . . . affected with knowledge of all material facts of which the agent receives notice or acquires knowledge while acting in the course of his employment." (31 Cyc. 1587.) A purchaser at a sheriff's sale is entitled to the protection of the recording act. (*Lee v. Bermingham,* 30 Kan. 312, 1 Pac. 73; Note, 21 L. R. A. 33.)

It is therefore necessary to decide whether an unacknowledged mortgage, which has been copied into the record book of the register of deeds, is void against one who buys the property knowing the contents of the record, but is otherwise an innocent purchaser for value. An instrument affecting real estate is entitled to record only when it has been acknowledged or proved as provided by the statute. And where such an instru-

ment is recorded without having been so acknowledged or proved, the record does not impart notice to anyone. (*Wickersham v. Chicago Zinc Co.*, 18 Kan. 481; *Wiscomb v. Cubberly*, 51 Kan. 580, 589, 33 Pac. 320.) The statute relating to the effect of a failure to record instruments affecting real estate reads:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." (Gen. Stat. 1868, ch. 22, § 21, Gen. Stat. 1909, § 1672.)

The precise question involved is whether one who has seen and read in the records in the office of the register of deeds what is in fact a copy of an existing unacknowledged instrument is to be regarded as having "actual notice" of the instrument itself, within the meaning of the statute. In Massachusetts and in Indiana "actual notice" is interpreted as equivalent to actual knowledge (Webb, Record of Title, § 222, p. 356, note 3), but the general rule is that evidence of facts and circumstances sufficient to put upon inquiry amount to actual notice (Webb, Record of Title, § 222, p. 356, note 4). "Actual notice does not mean that which in metaphysical strictness is actual in its nature, because it is seldom that ultimate facts can be communicated in a manner so direct and unequivocal as to exclude doubts as to their existence or authenticity. Actual notice means, among other things, knowledge of facts and circumstances so pertinent in character as to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." (*Pope v. Nichols*, 61 Kan. 230, 236, 59 Pac. 257.) "Actual notice may be either express or implied; that is, it may consist of knowledge actually brought personally home, or it may consist of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. . . . Actual notice is implied only when the known facts are suffi-

ciently specific to impose the duty to investigate further, and when such facts furnish a natural clue to the ultimate fact." (*Faris v. Finnup*, 84 Kan. 122, 124, 113 Pac. 407.)

This court is of the opinion (not shared by the writer) that one who has seen the record of an unacknowledged instrument is not deemed because of that fact to have actual notice of the instrument itself, upon these grounds: To charge him with such notice is to require him to assume, without proof and without competent evidence, that a valid conveyance is in existence corresponding to the unauthorized copy. If he is required to give any attention to the matter at all he may with equal or greater reason suppose the parties to have abandoned whatever intention they may have had to execute such a conveyance, from the fact that they failed to have a certificate of acknowledgment attached. To charge him with actual notice of the existence of a conveyance because he has seen a copy of it which, without legal authority, has been written in a book of public records, is essentially to give such copy the force of a valid record. To hold that the record of an unacknowledged conveyance, if known to a prospective buyer, amounts to actual notice of the instrument, is to compel him to give it force as evidence which the court itself would refuse it. This view is thus elaborated in *Kerns v. Swope,* (Pa. Supr. Ct. 1833) 2 Watts, 75:

"The registration being without the authority of the law, was the unofficial act of the officer, which could give the copy no greater validity than the original deprived of legal evidence of execution; nor even so much, for an original deed exhibited to a purchaser would affect him though it were unaccompanied with the evidence of its execution. But here the registry was no better than a copy made by a private person in a memorandum book; from which a purchaser would be unable to determine whether there were, in fact, an indorsement on the deed, or whether it had been truly

Nordman v. Rau.

copied—especially when neither the copy, nor an exemplification of it, would be legal evidence of the fact in a court of justice. Unquestionably a purchaser would not be affected by having seen the copy of a conveyance among the papers of another, or an abstract of it in a private book. The whole effect of a registry, whether as evidence of the original or as raising a legal presumption that the copy thus made equivalent to the original had been actually inspected by the party to be affected, is derived from the positive provisions of the law; and when unsustained by these, a registry can have no operation whatever. Stripped of artificial effect, it is but the written declaration of the person who was the officer at the time, that he had seen a paper in the words of the copy which purported to be an original. But to say nothing in this place of the incompetency of such a declaration as evidence of the fact, on what principle would a purchaser be bound to attend to the hearsay information of one who is not qualified to give it?" (p. 78.)

The same view was indicated in *Banister v. Fallis,* 85 Kan. 320, 116 Pac. 822, where it was said of the record of an unacknowledged instrument: "The instrument itself, if there were one, had no validity except between the parties and those having actual notice, not of what was on record, but of the instrument itself." (p. 322.)

The judgment is reversed and the cause remanded with directions to render judgment upon the findings quieting the title of Webb.

MASON, J. (dissenting) : My own view of the question presented is this: Where a prospective buyer of land sees upon the record what purports to be the copy of an instrument bearing no certificate of acknowledgment (or a defective one, for the rule would necessarily be the same), the inference which he would naturally and almost necessarily draw would be that the record was made at the instance of the grantee, and that the grantee claimed to have an interest in the

land under an instrument in the language of the copy. The record would not be competent legal evidence that such an instrument had been executed, but it would suggest that probability so strongly that a prudent person having knowledge of it would be put upon inquiry. It would give him a definite and tangible clue, which, if diligently followed up, would ordinarily bring the truth of the matter to light. In the present case, if an inquiry had been prosecuted with reasonable diligence, the existence of the mortgage would necessarily have been developed.

In *Banister v. Fallis,* 85 Kan. 320, 116 Pac. 822, the purchaser of land objected to the title because the record contained what purported to be a copy of a contract affecting it. The objection was held untenable because, the contract not having been acknowledged, the record was not evidence of its execution, and no other evidence on the subject was offered; and because the contract could not constitute a cloud in any event, inasmuch as it purported to be made by a stranger to the title. An additional reason was stated in the language quoted in the foregoing opinion: "The instrument itself, if there were one, had no validity except between the parties and those having actual notice, not of what was on record, but of the instrument itself." (p. 322.) I do not regard that decision as a definite determination of the question here involved.

I think the only case involving the exact question and supporting the decision here made is *Kerns v. Swope,* (Pa. Supr. Ct. 1833) 2 Watts, 75, cited in the opinion. That case is disapproved in the American notes to White & Tudor's Leading Cases in Equity (vol. 2, p. 152.) In 24 A. & E. Encycl. of L. 142, 143, it is said:

"If an instrument be not . . . entitled to record because of its defective execution or a failure to comply with some of the prerequisites to recordation, the record thereof will be a mere nullity and will not operate to give constructive notice. . . . But, . . . of course, such a record may be instrumental in giving actual

notice of the rights claimed under the instrument where the knowledge of its existence is brought home to the party claiming against such instrument."

Of the four cases cited in support of this text, these three are directly in point: *Rooker v. Hoofstetter,* 26 Can. Supr. Ct. 41; *Woods v. Garnett,* 72 Miss. 78, 16 South. 390, and *Musgrove v. Bonser,* 5 Ore. 313. To these may be added *Walter v. Hartwig et al.,* 106 Ind. 123, 6 N. E. 5, and *Hastings v. Cutler,* 24 N. H. 481, which are directly in point, and *Gilbert and others v. Jess, impleaded,* 31 Wis. 110, and *Musick v. Barney,* 49 Mo. 458, which are substantially so. The New Hampshire case is the leading one on the subject. The grounds of the decision are shown by this extract from the opinion, which is typical of the reasoning in the other cases:

"As the deed in this case was not executed according to the statute, the registration as such is inoperative; that is to say, the registration is not constructive notice of the conveyance. But if by means of that registration of the defective deed the defendants had actual notice of the plaintiff's title, they are charged with the notice as in other cases. The defendants, when they found the copy of the plaintiff's deed on record, must have understood that the intended record was to give information that such a deed had been made, and that the plaintiff claimed the land under it. This must be regarded as actual notice, such as every reasonable and honest man would feel bound to act upon." (*Hastings v. Cutler,* 24 N. H. 481, 483.)

A writer in the Central Law Journal, in discussing the source from which "actual notice" should come, says:

"It is not essential in every case that the notice should come from a party in interest, but that it should come from some one who is capable not only of informing the party of the adverse claim, but who can give such definite information as to details as will lead to the acquisition of full knowledge of the facts. If this is a correct deduction, then the copy of a deed, even though it were defectively acknowledged, would amount to

actual notice of a higher degree than mere oral information of the existence of such deed, even though the copy was made by a third party, and the oral information came from a prior grantee. Hence the registery of a defectively acknowledged deed would amount to notice of the conveyance, provided it were either admitted or proved, that the subsequent purchaser saw and examined the record where the deed was transcribed." (4 Central Law Jour., p. 293.)

The author of Wade on Notice, in an article published in the American Law Review in 1885, said:

"Registration of a deed, void for informalities, as constructive notice, coming to the knowledge of the subsequent purchaser, puts him in the direct line of inquiry, and is actual notice of every fact to which that inquiry would lead." (19 Am. Law Rev., p. 88.)

PORTER, J. (dissenting) : I concur in the foregoing dissent, and believe that the decision, especially when applied to recorded instruments which have defective acknowledgments, may work great injustice to innocent persons, and will produce results which the legislature in adopting the recording act never intended.