No. 20,465.

A. C. MOORHEAD and W. W. HAYWARD, *Appellants,* v. A. O.
EDMONDS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Specific Performance—Incomplete Findings—No Request
   for Further Findings—No Error.* A judgment will not be reversed
   because a trial court's findings of fact are incomplete and do not state
   all the facts connected with those found, where no request was made
   for further, clearer, or additional findings.

2. SAME—*Findings Supported by Evidence.* The seventh and eighth
   findings of fact are supported by the evidence.

3. SAME—*Contract Procured by Fraud—No Specific Performance.* Spe-
   cific performance of a contract for the conveyance of land ·will not ·be
   compelled where the purchaser secures the contract by fraud, know-
   ing that a contract for the sale of the land has been made with another
   person.

Appeal from Stevens district court; GEORGE J. DOWNER,
judge. Opinion filed December 9, 1916. Affirmed.

*Edgar Foster,* of Dodge City, and *W. E. Eddy,* of Hugoton,
for .the appellants.

*F. S. Macy, E. W. Davis,* both of Liberal, *Frank L. Martin,*
and *Van M. Martin,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs appeal from a judgment
denying specific performance of· a contract for the convey-
ance of land to them.

Plaintiff A. C. Moorhead was clerk of the district court of
Stevens county. Plaintiff W. W. Hayward was cashier of
the Hugoton State Bank. Moorhead and Hayward were part-
ners in the real-estate business. J. A. McMichael was a cus-
tomer of the Hugoton State Bank. Defendant R. M. Craw-
ford was a real-estate agent in Hugoton.

Defendant A. O. Edmonds owned a section of land in Stevens
county. On the 4th day of January, 1915, J. A. McMichael
bid in this land at sheriff's sale for $5200. Of this A. C. Moor-
head had knowledge. The land was listed for sale with a
number of real-estate agents, among whom was defendant R.

M. Crawford. The land was not listed with the plaintiffs. Soon after the conclusion of the sheriff's sale, J. A. McMichael withdrew his bid and entered into a written contract with R. M. Crawford for the purchase of the land. This contract contained, among other things, the following provisions:

"Possession to be given upon delivery of deed which is to be a general warranty deed executed by the present owner or owners, together with abstract showing clear title with all taxes paid to date and to be delivered as soon as it can be obtained.

"Provided Always, that this contract is entered into subject to the will and consent of present owner or owners, and provided further that in case the said second party shall fail or refuse to pay or accept land according to the conditions of this contract he shall forfeit to the said first parties, the amount of purchase money paid."

The trial court made findings of fact as follows:

"1. The defendants R. M. Crawford and James McMichael entered into a written contract on the 4th day of January, 1915, by which McMichael agreed to purchase the land in controversy for the agreed price of $7000.00; $3500.00 cash, balance on time secured by first mortgage with eight per cent interest as shown by written contract in the answer.

"2. In a short time and on the same day the plaintiffs solicited Michael to permit them to see the contract and after examining it asked McMichael why he did not allow them the opportunity to make the sale of the land. McMichael informed them that he did not know they were in the business and he finally said to them that he would give them the same opportunity he had given Crawford; that he would pay the man who first got him the deed for the land.

"3. Upon this statement the plaintiffs went to Liberal to try to purchase the land from Edmonds, the owner. Learning that he was at Helena, Oklahoma, they drove there that night and saw him there the next day.

"4. At Helena in the conversation with Edmonds, the owner of the land, Hayward the plaintiff, concealed from the fact that Crawford who had the land for sale at a net price of $6800.00 had made a contract of sale, subject to his consent to McMichael for $7000.00 and Hayward attempted to purchase the land for less than $6000. Hayward also deceived the defendant Edmonds by pretending that Moorhead, his partner, was in Hugoton and induced Edmonds to telegraph to Moorhead at Hugoton, directing him to see Mr. Nason at Elkhart, when at the time Moorhead was in the same town in the barber shop.

"5. On the 7th day of January, Nason executed the written contract set up in the petition, for sale of the land to plaintiffs and put the blank deed offered in evidence up, which was blank as to consideration as to grantee, and there was no revenue stamp upon it. This deed with the contract was put in escrow.

"6. The plaintiffs gave a check for $500.00 to Nason, endorsed the

check and forwarded it to Edmonds, and Edmonds cashed it and received the money upon it.

"7. Edmonds would not have accepted this check except for the deception practiced by plaintiffs.

"8. When Edmonds discovered that he had been deceived, that certain facts of which plaintiffs had knowledge were concealed from him, decided that he would not perform the contract made by Nason, and a short time thereafter, and on the 8th day of February, made a warranty deed of the premises to Crawford. Crawford paid his $6800.00 therefor.

"9. The defendant Edmonds, through his attorney Macy, offered to pay the $500.00 back to the plaintiff Hayward. Hayward told Macy to see Moorhead.

"10. At the trial of this case the defendants in open court tendered and have paid to the Clerk of the Court the sum of $500.00 for plaintiffs."

On these facts the court stated the following conclusions of law:

"1. The blank deed is not a sufficient writing to authorize the signing of a contract by Nason that would bind Edmonds.

"2. Nason has no interest in the land. He was the agent of Edmonds, and had no authority to sign the contract in writing.

"3. Edmonds was induced to accept the $500.00 upon the contract signed by Nason, by reason of deceit and concealment of the truth by the plaintiff Hayward.

"4. The plaintiffs are not entitled in equity to specific performance of the contract.

"5. That the temporary injunction hereinbefore granted should be dissolved."

1. The plaintiffs argue that the first, fourth, and fifth findings of fact are erroneous in that they are not complete and do not state all the facts properly connected with those found. The plaintiffs did not request further, additional, or clearer findings of fact. The plaintiffs, if they desired to complain of findings of fact because they were not complete or clear, should have requested the trial court to correct the findings. Since such a request was not made, this complaint will not be considered. (*Briggs v. Eggan,* 17 Kan. 589, 591; *Kellogg v. Bissantz,* 51 Kan. 418, 424, 32 Pac. 1090; *Pennell v. Felch,* 55 Kan. 78, 81, 39 Pac. 1023.)

2. The plaintiffs contend, in effect, that the seventh and eighth findings of fact are not supported by the evidence. An examination of the evidence shows that it amply supports

these findings. No good purpose will be served by setting out the evidence.

3. The plaintiffs complain that the conclusions of law are not based on the findings of fact, and insist that judgment should have been rendered in their favor. These two propositions will be considered together. Some of the conclusions of law are largely conclusions of fact, based on the evidence and on other facts shown in the findings. The controlling conclusion of law is that the plaintiffs are not entitled to specific performance of the contract. The plaintiffs, to support their contention, argue that whether or not the blank deed was a sufficient writing to authorize the signing of a contract by Nason, and whether or not he had any interest in the land, are immaterial in determining the judgment that should be rendered. This does not control the judgment, and, therefore, does not aid the plaintiffs. The plaintiffs also argue that defendant Edmonds ratified the acts of his agent, Nason, by accepting and cashing the check for $500. The difficulty with the plaintiffs' argument on this question is that Edmonds would not have accepted the check but for the deception practiced by the plaintiffs, and did not know of this deception until after the money had been received on the check.

The plaintiffs further argue that neither Edmonds nor McMichael was injured, and that Crawford, at the time he accepted the deed from Edmonds, knew of the plaintiffs' rights. This argument is not good. Edmonds has been injured in that he is liable to Crawford for commission on the sale of the land if the sale made by Crawford to McMichael is not consummated. McMichael has been injured in that he has been deprived of title to the land during the litigation. The plaintiffs' right to the land under their contract with Edmonds is subject and inferior to the rights of McMichael and Crawford, for the reason that the plaintiffs, when they secured their contract for the purchase of the land, had actual knowledge of the contract between McMichael and Crawford. Whatever interest the plaintiffs acquired in the land was acquired through the fraud and deception practiced by them when they induced Edmonds to contract with them for the sale of the land at a time when they knew that Edmonds' agent had contracted to

sell the land to McMichael. Edmonds had no knowledge of the contract with McMichael at the time he made the contract with the plaintiffs. The plaintiffs are not entitled to specific performance.

The judgment is affirmed.