No. 28,290.

W. ROY MARTIN and OLIVE MARTIN, *Appellees*, v. THOMAS WYATT ROBINSON, *Appellant.*

(272 Pac. 149.)

Opinion filed December 8, 1928.

*John J. Riling, Edward T. Riling* and *A. B. Mitchell,* all of Lawrence, for the appellant.

*M. A. Gorrill,* of Lawrence, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover upon a surety bond given as a guaranty of the faithful performance of a building contract. It was brought by W. Roy Martin and Olive Martin, husband and wife, against Thomas Wyatt Robinson, a building contractor and the Detroit Fidelity and Surety Company. Olive Martin held the legal title to a lot in Lawrence and through her husband entered into a contract with Robinson to build a residence and a garage thereon in accordance with plans and drawings furnished the contractor, who was to provide all labor, material and equipment necessary to the construction of the buildings for the sum of $5,833 and to complete them on or before November 1, 1925. The owner was to pay the contractor $1,000 when the foundation was completed, $800 when the frame was up and the roof on, and $800 when the plastering was completed, and the balance when the house was completed on or before November 1, 1925. The contract contained a provision that if the house was not completed at that time the contractor would pay the owner $5 per day until it was completed. Among the stipulations in the contract was one that the contractor should give a surety bond covering the faithful performance of the contract. A surety bond was given by the contractor, executed by the Detroit Fidelity and Surety Company. The contractor proceeded with the construction of the house, but before completion he abandoned the work, and it turned out that he had failed to pay for

material and labor used by him in constructing the building. The owner advanced money in payment of the work from time to time, amounting in all to $4,341.50. When this action was brought the contractor made default, but the surety company contested the claims of the plaintiffs.

In their petition plaintiffs alleged the making of the contract, the payments made to the contractor and his failure to faithfully perform the contract. They set forth a number of claims for labor and material which the contractor had used in the buildings and which he had failed to pay for, and for which mechanic's liens had been filed on the property, the giving of the surety bond, and that the plaintiffs had done all things required of them under the provisions of the bond. They asked that all lien claims be required to be set up by the respective claimants and to have them adjudicated, and that they recover judgment for the amount found to be due to them, as well as for damages for the failure to complete the buildings within the time fixed. The surety company filed a demurrer to the petition, which was overruled, and then answered in substance that the buildings to be constructed under the contract could not have been built for the contract price; that the plaintiffs and the contractor, with knowledge that it would cost a greater sum, had buildings erected, the cost of which was approximately $10,000; that this was done without knowledge of the surety company, and that plaintiffs have in fact suffered no loss by the default of the contractor. There was a further allegation that plaintiffs had advanced more money to the contractor than they should have done prior to the completion of the buildings, and that this was done without notice to or permission of the surety company. It was further alleged that modifications had been made in the plans of the house entailing added cost without the knowledge or consent of the surety company, and further that plaintiffs had failed to give due notice of the failure of the contractor, as required by the terms of the bond, and were not entitled to recover any amount under the bond. The trial resulted in a judgment against the surety company for $4,558.50, from which it appeals.

Error is assigned on the overruling of the demurrer to plaintiff's petition and in the rendering of judgment. The surety company insists that the plaintiffs failed to comply with the provisions of the surety bond in that they did not immediately notify the surety

company that the contractor had failed to complete the building on November 1, 1925. As the building was approaching completion the plaintiffs learned that some bills for labor and material were unpaid, and on December 21, 1925, they wrote a letter to the surety company that upon investigation it had been found that the contractors owed a number of dealers considerable sums of money for material and labor, which had not been paid, and they also called its attention to the fact that the contractor, who was still at work, had not completed the buildings in several particulars that were stated. The letter was acknowledged by the surety company on December 30, 1925, but it appears that the company did not offer to take over the contract and complete the building, nor did it take any action at that time other than to send its representative to check up the extent of the work done. The contract and the surety bond were set forth in the petition and the obligations of the several parties were stated in them. One provision was that if the contractor defaulted in carrying out the contract, or if he abandoned the work, the owners would immediately notify the surety company and thereafter the surety should have the right, at its option, to assume or sublet the contract to another and proceed with the completion of the building, in which event all the money agreed to be paid to the contractor and which at the time was unpaid, would thereafter be payable to the surety. While the contract was to be performed by November 1, notice that it was incomplete at that time was not given by the owners, but it was promptly given as soon as they discovered that the contractor was not paying for the labor and material which he had used in the buildings. The failure to finish the building on time, however, did not change the contract rights of the parties. That contingency was anticipated and mentioned in the contract. The contractor was still at work on the house on November 1, and for some time afterwards. Besides, the surety company, it appears, suffered no damage by lack of notice on November 1 that the house was unfinished, and a loss from that cause must be shown to relieve it from liability. (*School District v. McCurley,* 92 Kan. 53, 142 Pac. 1077.) In another case involving the effect of failure of the owners to give notice of defaults of an insured contractor and the rights of a surety company, it was said:

"The legal status of a surety company like the defendant is well defined in this state. It is an insurer for pay and does not occupy the position of the

ordinary surety, who voluntarily undertakes to make good the default of his principal. The bonds which it dictates to those in need of them are to be interpreted to accomplish indemnity against loss sustained. Notice of default and notice of final payment are not cast-iron conditions precedent to liability, but are reasonable reservations made to afford the insurer an opportunity to protect itself against loss should it need and should it be able to do so. If no notice be given but no loss result as a direct consequence, liability is not affected. Actual damage resulting from failure to give notice must be pleaded and proved as a defense." (*Republic County v. Guaranty Co.*, 96 Kan. 255, 258, 150 Pac. 590.)

Another contention is that the plaintiffs had not complied with the requirements on their part in respect to payments made to the contractor, contending that final payment of $3,200.33, the difference between the amounts specifically stated and the contract price of the buildings, should have been reserved until the completion of the buildings. In the contract between the owners and contractor it was stipulated, as we have seen, that the contractor should pay $1,000 when the foundation was completed, $800 when the frame was up and the roof on, and $800 more when the plastering was completed, and the balance on the completion of the house. There was no provision in the contract with the surety company that any part of the price should be withheld for a definite time for the protection of the company, nor that it would escape liability if consent to final payment was not made to the owner, as only $4,341.50 of the price had been paid, leaving $1,480.50 of the contract price. It is not uncommon to provide in such contracts that the owner shall pay the contractor certain amounts from time to time and that a considerable amount shall be withheld and not paid without notice to and the consent of the surety. No such provision is found in this surety contract, nor is it open to such an implication. Moreover, the surety company sustained no loss by reason of payments before the work was finished. The payments made by the owners to claimants after November 1 for labor and material were credited to the surety company, and reduced to that extent the liability upon the bond. Considerable is said that the contract price was insufficient and that plaintiffs were to get a $9,000 house for $5,833. It may have been that the contract was taken at too low a price, and Robinson is spoken of in the record as a cutthroat contractor, but the price to be paid for the building was a matter of contract. No fraud in its execution was pleaded or shown. The fact that the

contractor may have underestimated the cost of the construction is no defense to the contractor. The surety company, with its eyes open, guaranteed its performance, and it, no more than the contractor, can be relieved from liability by an underestimate of the cost of the building. It was an insurer that the contract would be performed. For a premium paid it guaranteed that the contract as made would be carried out, and it is not in a position to say to the owners that the contract was too favorable to them or that they got a better house than they bargained for. Mention is made of the fact that some alterations were made in the plans which affected the cost, but it appears that these were paid for by the owners and are not included in the amount adjudged against the surety company.

We conclude that a cause of action was stated in the petition and further that the judgment rendered is not without support.

Complaint is made that requested findings of fact and law were not made. It appears that no timely request was made for special findings. On his own motion the court in a memorandum opinion stated his views on the facts and law of the case, but did not assume to make formal findings. There was no request by the defendant for such findings until the case had been tried out and the judgment announced. It was then too late to demand special findings, and hence there was no error in the refusal. (*Kansas City v. King*, 65 Kan. 64, 68 Pac. 1093; *Marquis v. Ireland*, 86 Kan. 416, 121 Pac. 486.)

No material error being found in the record, the judgment is affirmed.