No. 37,868

PHILIP S. HORNEY, *Appellant,* v. J. O. BUFFENBARGER, JR., ELEANOR G. BUFFENBARGER, KATHLEEN J. HORNEY and KATHLEEN J. KENNEDY, *Appellees.*

(219 P. 2d 345)

Opinion filed June 10, 1950.

*Kirke C. Veeder,* of Independence, argued the cause and was on the briefs for the appellant.

*Rex A. Lafferty,* of Fredonia, argued the cause, and *T. D. Hampson,* of Fredonia, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a husband to set aside a deed to city property which his wife conveyed pursuant to a duly executed and recorded power of attorney.

The plaintiff, Philip S. Horney, filed the action against his wife, Kathleen J. Horney and the purchasers of the property, J. O. Buffenbarger, Jr., and Eleanor G. Buffenbarger, his wife. No service was had on appellant's wife. The purchasers were the only parties defendant. Judgment was in favor of the purchasers and plaintiff has appealed.

At the time of the conveyance on November 25, 1946, and for some time prior thereto, appellant was serving in the ordnance department of the army in the Pacific theater. The title to the property stood of record in his name. In July, 1944, he had executed the following power of attorney to his wife:

"POWER OF ATTORNEY

"Know all Men by These Presents, that I, the undersigned, Philip S. Horney of Neodesha, in the county of Wilson, State of Kansas, have made, constituted and appointed, and by these presents, do make, constitute and appoint Kathleen J. Horney, of Neodesha, in the county of Wilson, State of Kansas, my true and lawful attorney in fact, for me and in my name and stead, and to my use;

"1. To grant, bargain, sell, mortgage or lease, whether with or without covenants and warranties in respect to the following land, to wit: [description of property] or to any other lands, buildings, tenements, leaseholds or other structures or any part or parts thereof that may belong to me now or to which I may become entitled at any time.

"2. To enter upon and take possession of any such land, buildings, tenements or other structures or parts thereof and to collect and receive rents, profits, issues or income therefrom, to manage, repair, alter and reconstruct all buildings or structures thereon; such powers as above enumerated to spe-

cifically include acts relating to our homestead and my consent thereto.

"3. Without, in any wise, limiting the foregoing, generally to do, execute and perform any other act, deed, matter, or thing, whatsoever, that ought to be done, executed and performed, including all reports, tax returns, applications, transactions and dealings with Federal, State and local governments and departments and agencies thereof, or that, in the opinion of my said attorney, ought to be done, executed or performed in and about the premises, of every nature and kind, whatsoever as fully and effectually as I could do, if personally present; and

"Hereby give unto my said attorney in fact, full authority and power to do everything whatsoever requisite or necessary to be done in the premises, as fully as I could or might do if personally present, with full power of substitution and revocation, hereby confirming and ratifying all that my said attorney in fact, shall lawfully do or cause to be done, hereunder.

"Witness my hand this 7th day of July, 1944.

"PHILIP S. HORNEY."

The foregoing instrument was properly acknowledged and was recorded in the office of the register of deeds of Wilson county December 6, 1945. On November 25, 1946, appellant's wife individually and as attorney in fact for her husband entered into a written contract with appellees for the sale of the real estate together with the furniture in the home at the agreed price of $5,000. She agreed to furnish a merchantable title. The purchase price was paid in full to appellant's wife. A warranty deed was executed by her individually and by her as attorney in fact for her husband. It was delivered and recorded November 27, 1946.

Prior to the execution and delivery of the deed to appellees the latter made application to the Neodesha Building and Loan Association for a loan to finance the purchase. That company already had possession of the abstract of title by reason of a mortgage loan it previously had made to appellant and his wife. The first thing the loan association did after appellees made application for the loan was to send the abstract to the Fink Abstract Company at Fredonia to have it brought up to date and certified. Upon its return the loan association delivered the abstract to its attorney for examination. He examined it and delivered his written opinion to the loan association. The opinion dated November 26, 1946, referred to the loan of $1,600 already held by that loan association and called attention to a discrepancy in the initial of appellant's wife as disclosed in the power of attorney. Subject to those matters the loan association's attorney approved the title stating he did so assuming the abstract was complete and accurate. Upon

such advice the loan association took steps to complete the loan to appellees. It recorded its new mortgage loan. Its attorney thereafter on December 1, 1946, delivered his second opinion advising the loan association the title was sufficient for loan purposes and that its loan to appellees in the sum of $2,500 constituted a first lien on the property.

The Fink Abstract Company's statement for services rendered was delivered to the loan association and contained the following notation:

"In
"Account     Neodesha Building & Loan Assn."
"With

The loan company made its own check for abstract services payable to "Fink Abstract Company" and on the bottom of the check were the words, "For J. O. Buffenbarger." The secretary of the loan association, upon being asked why the words, "For J. O. Buffenbarger", were placed on the check, stated the purpose thereof was to indicate that it was an expense check in connection with the J. O. Buffenbarger loan. Although the secretary of the loan association was not certain he believed he had told Buffenbarger that in making loans the association required the purchaser to pay the expense of having the abstract perfected and certified to date. It appears Buffenbarger understoood that and he paid the loan association for the abstract services after the latter had paid the abstracter.

We now reach the principal facts which occasioned this lawsuit. Sometime prior to the contract of sale between appellant's wife and appellees the appellant without notifying his wife sent a message from Manila to the register of deeds of Wilson county as follows:

"ALL POWERS OF attorney Given by Me Prior to Date Hereby Revoked

"M/SGT PHILIP S. HORNEY, 280A"

Although the purported revocation of the power of attorney was unacknowledged the register of deeds indexed and recorded the instrument August 5, 1946. Appellees at no time had the abstract of title in their possession. The abstract as delivered to the loan association by the abstracter contained no entry or mention of the alleged revocation. When appellant returned to Neodesha in December, 1946, or January, 1947, his wife was gone. He was unable

to locate her. She had received full payment for the property from appellees. Appellant found appellees in possession of the premises.

This action was filed January 1, 1948. In his petition appellant, in substance, alleged: The deed to appellees was without legal force and effect by reason of the fact appellant's wife was without lawful right, power or authority to convey the property; by reason of appellant's military services he was prevented from being in Wilson county to protect his interests and the transaction between his wife and appellees was in fraud of his rights; appellant's wife had no right or authority to receive any consideration for the transaction; he had received no part of the consideration and appellees should be adjudged to have no right, title or interest in the property.

The trial court found the issues generally in favor of appellees and in the journal entry of judgment also made some further findings respecting the narrative of events and a finding in the nature of a legal conclusion relative to the invalidity of the purported revocation of the power of attorney to give notice to purchasers. This subject will receive further attention later.

It is not contended the power of attorney was executed by appellant other than as his free and voluntary act. No attack is made on the legal sufficiency of that instrument for the use and purpose intended. It is not claimed appellant's wife had any knowledge of the purported revocation. There was no evidence of a fraudulent intent on the part of the purchasers. They had no knowledge of the purported revocation until this action was filed. Neither the loan association nor the attorney who examined the abstract for it had notice thereof unless it can be said they had constructive notice by virtue of the recorded unacknowledged revocation which was not disclosed in the abstract of title. The bonded abstract company is not a party to this action. Its certificates were of the uniform character and in addition to certifying there were no judgments, etc., on file or of record in the office of the clerk of the district court affecting the title to the described real estate the certificates also stated:

"We, the undersigned, do hereby certify that the foregoing is a true and correct abstract of all conveyances and other instruments of writing, including Federal Income Tax Liens, filed for record or recorded in the office of Register of Deeds of said County (except any instrument filed as a chattel only), affecting the title to the following described real estate situate in the County of Wilson, State of Kansas, to-wit: [description of property]."

Appellant's first contention is the power of attorney nevertheless

wâs revoked prior to the sale of the property. For statutes requiring acknowledgment of instruments in writing conveying real estate, or whereby any real estate may be affected, see G. S. 1935, 67-209 to 67-220, inclusive. The pertinent part of G. S. 1935, 67-221 provides:

"Every instrument in writing that conveys real estate, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, *may be recorded* in the office of register of deeds of the county in which such real estate is situated. . . ." (Our italics.)

G. S. 1935, 67-222 reads:

"Every such instrument in writing, *certified and recorded in the manner hereinbefore prescribed,* shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." (Our italics.)

Section 1, chapter 232, Laws of 1943, provides:

"All letters of attorney or powers of attorney intended for use in this state may be acknowledged or proved in the same manner as conveyances of land are acknowledged or proved; *and when any letter of attorney or power of attorney is acknowledged or proved in such manner, the same may be recorded in the same manner as a conveyance of land is recorded;* and copy of any such letter of attorney or power of attorney, duly certified, shall be admitted in evidence without accounting for the nonproduction of the original thereof." (G. S. 1947 Supp. 58-601.) (Our italics.)

Section 2 of the same act reads:

"Any instrument in writing revoking or purporting to revoke any letter of attorney or power of attorney *when acknowledged or proved in the same manner as a conveyance of land is acknowledged or proved, may be recorded in the same manner as a conveyance of land is recorded, and with like effect from the time of its recording."* (G. S. 1947 Supp. 58-602.) (Our italics.)

By chapter 258, Laws of 1945, the legislature provided an additional and easy method for servicemen to obtain acknowledgments to written instruments and, when so acknowledged, made them admissible in evidence and eligible to record in this state under the same circumstances, and with the same force and effect, as if acknowledged within this state as otherwise provided by law. (G. S. 1947 Supp. 67-216c, 67-216d.)

In this state it was early held an instrument affecting title to real estate is not eligible for record unless acknowledged and certified as required by law. (*Meskimen v. Day*, 35 Kan. 46, 10 Pac. 14; *Sanford v. Weeks*, 38 Kan. 319, 324, 16 Pac. 465; *Fisher v. Cowles*, 41 Kan. 418, 21 Pac. 228; *Bannister v. Fallis*, 85 Kan. 320, 322, 116 Pac. 822;

*Nordman v. Rau,* 86 Kan. 19, 20, 119 Pac. 351) and that unless acknowledged and certified as required by law the record does not impart notice to anyone. (*Wickersham v. Chicago Zinc Co.,* 18 Kan. 481, 487; *Hayhurst v. Underwood,* 126 Kan. 349, 352, 267 Pac. 965.)

Appellant directs attention to G. S. 1935, 67-223, which provides:

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record,"

and argues appellees' agent, the Fink Abstract Company, had notice of the revocation. The contention, of course, assumes the abstracter was appellees' agent, a fact the trial court, as will presently appear, refused to find. It may be well to emphasize this is not an action by purchasers of property against an abstracter for failure to notice the purported revocation, or to notice it and fail to enter it upon the abstract. Concerning such an action we, of course, express no opinion now. The question here is only whether the recorded unacknowledged revocation imparted constructive notice to purchasers in the instant case that the power of attorney had been revoked. We hold it did not.

Appellant next asserts the unacknowledged revocation placed appellees on inquiry which they were required to pursue. The point has been decided adversely to his contention. (*Nordman v. Rau,* supra.) Appellant recognizes that decision but contends the majority rule in this country is to the contrary, is sounder and should be adopted. This court is not unmindful of decisions contrary to the Nordman case with respect to the particular contention made by appellant. Whether the Nordman case should be followed or overruled with respect to that particular point need not be determined in the instant case. That decision may await a case involving the same facts as existed in the Nordman case. In that case the purchaser had "actual knowledge" of the contents of the record by reason of an examination of it by his agent which knowledge, because of the nature of the agency, was construed to be "actual knowledge" of the purchaser of the contents of the record. The case was decided upon the theory the purchaser had personally seen and read the records in the office of the register of deeds. In the instant case the purchasers did not personally examine the records and that feature of the Nordman case is not controlling here. Appellant argues appellees had a duty to examine the records. We think it

more accurate to say a purchaser's failure to examine the records does not relieve him of constructive notice imparted by the records.

Decisions relied on by appellant such as *Pope v. Nichols,* 61 Kan. 230, 59 Pac. 257; *Faris v. Finnup,* 84 Kan. 122, 113 Pac. 407; *Edwards v. Myers,* 127 Kan. 221, 273 Pac. 468; *Federal Savings & Loan Ins. Corp. v. Urschel,* 159 Kan. 674, 157 Pac. 805; *Hoult v. Rich,* 161 Kan. 587, 170 P. 2d 834, are not out of harmony with the views previously stated herein with respect to constructive notice resulting from our recording statutes. They pertain to actual notice, express or implied, obtained outside the record of the register of deeds which if pursued would have disclosed the actual title to the property involved. Appellant does not contend appellees, or any agent of theirs, had notice of any facts outside the record which would have placed a prudent person on inquiry and that inquiry, if made by reason of such facts, would have disclosed appellant had revoked the power of attorney.

Appellant argues the new 1943 statute, previously set forth (G. S. 1947 Supp. 58-602) which provides for revocation of power of attorney does not limit the method of revocation to a written instrument. The statute prescribes what kind of a written revocation may be recorded. In the instant case the only evidence of revocation relied upon was a recorded written instrument insufficient to impart notice of revocation to anyone.

The journal entry of judgment discloses the trial court found generally for appellees and made some other findings, as well as a finding which probably would be more accurately denominated a conclusion of law. Appellant complains concerning the refusal of the court to make two additional findings of fact. The trial was had on October 21, 1948. Counsel for the respective parties requested leave to file briefs. Attorneys for appellees suggested the possibility of a settlement and requested a delay in the decision for a reasonable time. Counsel for appellant acquiesced in the request. Briefs were filed and the court rendered its decision March 15, 1949.

On March 18, 1949, appellant filed his motion to set aside findings of fact and for a new trial. On April 2, 1949, appellant requested the trial court to clarify the findings made and to amplify the findings by making two additional findings, as follows:

"1. That the Fink Abstract Company in certifying and recertifying the abstract of title to the real property in question in the above action on November 25th and November 27, 1946, acted as the agent of defendants, J. O. Buffenbarger, Jr., and Eleanor G. Buffenbarger.

"2. That the Fink Abstract Company in certifying and recertifying said abstract of title as above found, checked the records in the office of the Register of Deeds concerning the real property in question in this action and saw the record therein of plaintiff's telegram above quoted, recorded and indexed as above found in the office of said Register of Deeds."

The foregoing motions were overruled. Appellant argues that where a court makes some findings of fact it should make findings on all material issues of fact when requested to do so, citing *Moorhead v. Edmonds*, 99 Kan. 343, 161 Pac. 610.

Appellees assert the motion for findings of fact was not timely made and was, therefore, properly overruled. They further contend unless substantial prejudice resulted from failure to make requested findings, an appellant cannot complain, citing *Marquis v. Ireland*, 86 Kan. 416, 121 Pac. 486; *Martin v. Robinson*, 127 Kan. 100, 272 Pac. 149; *Federal Land Bank v. Bailey*, 156 Kan. 464, 467, 134 P. 2d 409.

Passing the question whether appellant's motion for additional findings was timely made it is clear from what has been said previously herein that we cannot, as a matter of law, say the court was compelled to make that finding.

With respect to requested finding No. 2 there was no evidence the abstracter actually saw the record of the telegram when examining the records in the office of the register of deeds. The court was not asked to find the abstracter should have seen it. Whether he should have seen it and entered it on the abstract may become material in other actions we are advised are now pending. Concerning that matter we presently express no views.

Another subject suggested to counsel by this court on oral argument but which counsel for the parties admitted was not presented to the trial court is not determined.

The judgment of the district court is affirmed.