NOT DESIGNATED FOR PUBLICATION

No. 121,751

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY SHAWN CASEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellant*.


MEMORANDUM OPINION


Appeal from Saline District Court; EDWARD E. BOUKER and RENE S. YOUNG, judges. Opinion filed January 8, 2021. Reversed and remanded with directions.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., MALONE, J., and MCANANY, S.J.


PER CURIAM: Jeffrey Casey appeals the trial court's summary dismissal of his K.S.A. 60-1507 motion. He argues that the trial court should not have allowed his counsel to withdraw without appointing new counsel. We agree and reverse. Also, he argues that the trial court erred in summarily dismissing his motion. We agree. Because we conclude that the trial court erred when it summarily dismissed Casey's motion, we reverse and remand for appointment of new counsel and direct that a preliminary hearing be conducted in this matter.

Casey appeals the trial court's summary denial of his K.S.A. 60-1507 motion. The relevant facts of the underlying case are as follows:

In August 2005, a man entered the apartment of B.H. after she had gone to bed. He raped and sodomized her. As soon as her attacker left, B.H. sought help from a neighbor and called the police. Police transported B.H. to a Salina hospital for treatment. A sexual assault nurse examiner collected evidence likely to contain DNA. B.H. could not provide a particularly useful description of the man because the apartment was dark. According to police records, B.H. described her attacker as black or Hispanic to one police officer but described the attacker as white or Hispanic to another officer. At trial, B.H. testified that she never said that her attacker was black. Casey is white.

The biological evidence was sent to the Kansas Bureau of Investigation (KBI) laboratory for testing. The testing of biological evidence taken from B.H.'s neck and upper chest produced a DNA profile. Three months later that profile was run through a national databank resulting in a match with a known DNA sample from Casey.

In August 2010, the State filed charges against Casey. At trial, B.H. testified as to the circumstances of the assault. B.H. testified that her room was very dark and that she saw only a silhouette and no facial features. B.H. also testified to the following about her assailant: "He said that I knew who he was." B.H. testified that her attacker licked her on the cheek, chest, and "everywhere."

Casey testified in his own defense and recounted for the jury that he and B.H. had mutual friends, so they knew each other in passing. Casey told the jury that he recalled running into B.H. at a shopping mall in Salina in early August 2005 and giving her a hug. Christopher Klenda, a friend of Casey's, testified that he recalled both being with Casey at the mall and the chance encounter with B.H. Klenda told the jury that he remembered their hug. The testimony was aimed at offering an alternative explanation for Casey's

2

DNA being found on B.H. following the attack. Neither Casey nor Klenda could recall the day or date when the hug had occurred.

The State presented testimony on the biological evidence and the identification of Casey as the person whose DNA profile matched the profile drawn from that evidence. The DNA expert at trial explained that touch DNA would not had left much DNA behind and that such DNA would not have been recoverable for very long. For example, DNA left behind by casual touching would be removed by changing clothes, washing, or the passage of time.

In preparation for trial, Casey's trial counsel engaged the services of Genetic Technologies, Inc. The State moved for reciprocal discovery to get any reports prepared by any DNA expert that Casey would call to testify. Trial counsel declined to call a DNA expert as part of Casey's defense.

The jury found Casey guilty of rape, attempted rape, three counts of aggravated criminal sodomy, attempted aggravated sodomy, and aggravated sexual battery. He appealed. This court affirmed his conviction. *State v. Casey*, No. 109,172, 2014 WL 5610078 (Kan. App. 2014) (unpublished opinion).

In July 2016, Casey filed a timely K.S.A. 60-1507 motion. Casey's motion asserted ineffective assistance of counsel both at trial and on appeal. Casey claimed that trial counsel: (1) failed to give proper notice that she intended to elicit testimony from the victim about prior sexual relations; (2) failed to properly argue prejudice in a motion to dismiss; (3) failed to investigate witnesses who could corroborate Casey's testimony about innocent physical contact Casey had with the alleged victim; (4) failed to investigate witnesses who could corroborate Casey's testimony about his relationship with the victim; and (5) failed to investigate whether there was security camera footage at

3

the local mall that might have revealed Casey's friendly contact with the victim. The first two of those five claims were not briefed on appeal.

With his K.S.A. 60-1507 motion, Casey attached a witness list. Casey listed the following witnesses: Mall Security of Salina Central Mall, Christopher Klenda, Sarah Eaton, Julie McKenna, Adam Stolte, and Josh Koch. Josh Koch was B.H.'s boyfriend when the alleged rape occurred and was her husband when the trial was held. Sarah Eaton had been Casey's girlfriend until just before the rape trial occurred. Julie McKenna and Adam Stolte were Casey's trial counsel and appellate counsel, respectively.

Casey argued that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal and for failing to appeal the trial court's ruling on timely prosecution under K.S.A. 21-3106(3)(a). Casey also stated that trial counsel had erred by not making proper objections to State's evidence and by failing to retain any experts that might have assisted in the case. He also claimed that appellate counsel formulated defenses without reviewing the full record and failed to thoroughly investigate witnesses.

In August 2016, the trial court appointed counsel to represent Casey in his K.S.A. 60-1507 motion. In August 2017, without Casey being present, his appointed counsel, Richard Comfort, orally requested to withdraw as Casey's counsel. The trial court allowed Comfort to withdraw, ruling that Casey must present a substantial question of law or triable issue of fact before counsel should be appointed. The trial court determined that it would first review and rule on the issues raised by Casey's K.S.A. 60-1507 motion and the State's answer and response before deciding if to appoint new counsel for Casey. The trial court then summarily denied Casey's motion.

Casey timely appeals.

4

*Did the Trial Court Err in Allowing Counsel to Withdraw Without Appointing New Counsel?*

On appeal, Casey correctly argues that Comfort could not withdraw as his counsel without notifying him. See Supreme Court Rule 117(a) (2020 Kan. S. Ct. R. 190). Also, Casey correctly argues that the trial court erred by allowing Comfort to withdraw without appointing new counsel. See Supreme Court Rule 183(n) (2020 Kan. S. Ct. R. 223). The State, however, argues that the trial court did not err because Casey never had a right to counsel when his motion failed to present "a substantial question of law or triable issue of fact, quoting Supreme Court Rule 183(i) (2020 Kan. S. Ct. R. 225). Thus, the State argues that the trial court's error was harmless because Casey never had a right to counsel.

When the trial court summarily dismisses a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Interpretation of a Supreme Court rule is a question of law subject to unlimited review. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 451, 437 P.3d 929 (2019).

Casey begins his argument by noting that no written motion to withdraw as counsel appears in the record. The journal entry allowing Comfort to withdraw seems to grant an oral motion made at a hearing where Casey was not present. In part, Kansas Supreme Court Rule 117 states the following:

> "(a) Withdrawal of Attorney When Client Will Be Left Without Counsel. When withdrawal of an attorney who has appeared of record in a proceeding will leave the client without counsel, the attorney may withdraw only when:
> (1) the attorney has served a motion for withdrawal on the client—and on all counsel of record and unrepresented parties not in default for failure to appear—that:

(A) states the reasons for the withdrawal, unless doing so would violate an applicable standard of professional conduct;

(B) provides evidence that the withdrawing attorney provided the client:

(i) an admonition that the client is personally responsible for complying with all orders of the court and time limitations established by the rules of procedure or by court order; and

(ii) notice of the date of any pending trial, hearing, conference, or deadline; and
(C) provides the court with a current mailing address and telephone number for the client, if known;

(2) the attorney has filed a copy of the motion and proof of service; and

(3) the court issues an order approving the withdrawal."

Based on our record, Comfort did not meet those requirements of Rule 117. The State does not argue that Comfort met those requirements. The State instead argues that Casey had no right to appointed counsel and, therefore, Comfort did not need to meet the Rule 117 requirements before withdrawing as appointed counsel. But Rule 117 does not distinguish between counsel appointed as a matter of right, retained counsel, or counsel appointed at the court's discretion. All categories are covered under Rule 117. Counsel should not be allowed to withdraw until the following:  after complying with Rule 117 and after counsel has fulfilled his or her duties to notify the inmates of the court's decision and advising them of their appeal rights. See Kansas Rule of Professional Responsibility (KRPC) 1.16(d) (2020 Kan. S. Ct. R. 341); *Strong v. Bruce*, No. 97,204, 2010 WL 744774, at *10 (Kan. App. 2010) (unpublished opinion) (citing *State v. Alsup*, 239 Kan. 673, 674-75, 722 P.2d 1100 [1986]). Thus, Casey correctly contends that the trial court erred in granting Comfort's motion to withdraw as his counsel.

Also, Casey correctly argues a second error. Casey contends that the trial court erred by not appointing new counsel after Comfort withdrew as his attorney. Supreme Court Rule 183(n) (2020 Kan. S. Ct. R. 225) states the following:  "Withdrawal of Counsel. If appointed counsel is permitted to withdraw for good cause while the case is

6

pending in either the district court or the appellate court, the district court must appoint substitute counsel."

The State, however, focuses on the threshold requirement for appointed counsel in a K.S.A. 60-1507 motion. Rule 183(i) (2020 Kan. S. Ct. R. 225) states the following: "Right to Counsel. If a motion to vacate, set aside, or correct a sentence presents a substantial question of law or triable issue of fact, the court must appoint counsel to represent an indigent movant." The State argues that Casey presented no substantial question of law or triable issue of fact. Thus, the State argues that the court did not err by allowing Casey to proceed without counsel because he never had a right to counsel in the first place. Nevertheless, the State's rebuttal argument ignores the plain language of Rule 183(n). This argument would be correct only if Rule 183(n) began as follows: "Withdrawal of Counsel. If the movant has a right to counsel and appointed counsel is permitted to withdraw . . . ." But Rule 183(n) is absent of such language. Indeed, Rule 183(n) contains no qualifier about the right to counsel and, thus, requires the court to appoint new counsel when any appointed counsel withdraws. Notably, the State cites to no case authority where a trial court has been affirmed on appeal after the court allowed appointed counsel to withdraw and did not appoint substitute counsel. The trial court here erred when it did not appoint new counsel for Casey.

But the State argues that this error was harmless, citing *Mundy v. State*, 307 Kan. 280, 408 P.3d 965 (2018). Casey, however, claims that after his counsel withdrew, he had to proceed without counsel, which was detrimental to his case. To establish ineffective assistance of counsel, a movant must show prejudice. See 307 Kan. at 296 (explaining that an ineffective assistance of counsel claim requires the movant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense).

As we will explain in the following paragraphs, Casey did present a potential substantial issue of fact. And, thus, he was entitled to appointed counsel.

7

*Did the Trial Court Err in Summarily Denying Casey's K.S.A. 60-1507 Motion?*

On appeal, Casey argues that his K.S.A. 60-1507 motion presented issues that required an evidentiary hearing. The State contends that Casey's claim of innocently hugging the victim at a different time and place would not change the jury verdict. So the State argues that Casey's trial counsel did not need to find witnesses or video of the hug to effectively represent Casey. The State also argues that the record establishes that Casey's trial counsel consulted with a DNA expert, but counsel strategically chose not to have an expert testify at trial.

A district court has three options when handing a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

To avoid the summary denial of a motion brought under K.S.A. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If such a showing is made, the court is required to hold a hearing unless the motion is a "'second'" or "'successive'" motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]); see also *State v. Sprague*, 303 Kan. 418, 425, 362

P.3d 828 (2015) (applying initial pleading requirements when reviewing denial of posttrial, presentencing motion for ineffective assistance of counsel).

A prisoner generally is entitled to a hearing on a K.S.A. 60-1507 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2019 Supp. 60-1507(b); *Beauclair*, 308 Kan. at 302. When the trial court summarily denies a K.S.A. 60-1507 motion, as the court did here, appellate courts review that decision de novo to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales*, 300 Kan. at 881.

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019), citing *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

To establish ineffective assistance of appellate counsel, defendant must show the following: (1) that counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness and (2) that the defendant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. See *Miller v. State*, 298 Kan. 921, 930-31, 934, 318 P.3d 155 (2014).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell

9

within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Sprague*, 303 Kan. at 426.

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent that reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690-91).

As we have stated, some of Casey's claims of ineffective assistance of counsel made in his K.S.A. 60-1507 motion are not argued on appeal. Issues not briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Casey's claims of ineffective assistance of counsel made in his appellate brief are scattered and hard to follow, but we will try to address each claim that is being asserted on appeal.

First, Casey's K.S.A. 60-1507 motion alleges that his trial counsel was ineffective in pursuing a claim of mistaken identity. Casey contends the fact that B.H. thought her attacker might have been black or Hispanic undermines the validity of the accusation against him. Casey argues that B.H. knew him and should have been able to identify him as her attacker if he was actually her attacker. Thus, Casey argues that his trial counsel should have shown through witness testimony that Casey and B.H. knew each other.

At trial, Casey testified that he had interacted with B.H. a total of five times, the last time being at the mall when he walked up and hugged her. So Casey asserts that

10

because B.H. knew him so well, she should have been able to identify him as her attacker even though the room was dark. Instead, B.H. described her attacker as black or Hispanic to one police officer. Casey is white. The State responds that Casey's trial counsel was not ineffective for failing to pursue this claim because "[f]inding witnesses to support these possible interactions [between Casey and B.H.] was not necessary for his defense."

"[T]he lawyer, after consulting with the client, has exclusive control over decisions as to what witnesses to call, whether or how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions." *Cheatham*, 296 Kan. at 445-46. Based on the record, we can speculate that there were several reasons to justify why Casey's trial counsel strategically chose not to call witnesses to establish that Casey and B.H. knew each other.

First, B.H. testified that her attacker told her that they knew each other. Given this testimony, counsel's reasonable professional judgment could have steered away from evidence that Casey and B.H. knew each other. Second, of the witnesses that Casey listed in his K.S.A. 60-1507 motion, only two witnesses could corroborate that Casey and B.H. knew each other. One witness was B.H.'s husband and the other was Casey's ex-girlfriend. Trial counsel could reasonably have determined that these witnesses' testimony may not have been favorable for Casey. Finally, DNA evidence connected Casey to the attack, not B.H.'s identification. Thus, trial counsel could have reasonably concluded that attacking B.H.'s ability to identify her assailant was not sound trial strategy.

But all of these reasons are speculative. We do not know why Casey's trial counsel did not pursue this defense because his counsel has never testified to explain her strategy in deciding which witnesses to call at Casey's trial. Casey's assertion that B.H. knew him well enough so that she should have been able to identify him as her attacker is a plausible defense that could have affected the outcome of the trial. Thus, Casey's claim that his trial counsel was ineffective in failing to investigate and call witnesses who could

11

have corroborated Casey's testimony about his prior contacts with B.H. may have some merit. We are unable to say that the motion, files, and records of the case conclusively show that Casey is entitled to no relief on this claim. See K.S.A. 2019 Supp. 60-1507(b). Thus, we reverse the district court's summary denial of this claim and remand for the appointment of counsel to represent Casey in pursuing this claim in district court.

Next, Casey argues that his DNA was present on B.H. only because he had hugged her at the Salina Central Mall. Casey contends that his trial counsel was ineffective for not finding witnesses and security camera footage to prove that the hug occurred. The trial court correctly determined that failure to produce additional witnesses on this point did not make trial counsel ineffective. First, Casey failed to name any witness that trial counsel could have produced. By not naming witnesses, Casey makes the assertion that his counsel should have found someone who could testify to witnessing a hug five years earlier. This assertion is conclusory and unsupported. Second, any such witness would have been cumulative to Casey's own testimony and the testimony of his friend Klenda. Third, neither Casey nor Klenda could recall when the hug between Casey and B.H. had occurred. Finally, as this court noted on Casey's direct appeal, Casey's alternative explanation for how his DNA was present on B.H. did not fail because it lacked witness support, but because the explanation had "a powerful air of implausibility." *Casey*, 2014 WL 5610078, at *4.

Casey also faults his trial counsel for not producing footage of the hug from the mall's security cameras. Here again, as with a witness, Casey failed to show that trial counsel could have produced such video. The trial court correctly ruled that counsel was not ineffective, stating the following: "[T]he existence and value of such security video is highly speculative, and nothing in the motion or the record show a reasonable likelihood that the video was created, existed at the time the petitioner was charged, or that it would have been of value to the defense at trial." Again, Casey could not specify

12

the date and time when the hug had occurred. This deficiency would make it difficult for counsel to find the video even if it existed.

Casey's final claim of ineffective assistance of counsel concerns the DNA evidence and the failure of his trial counsel to acquire a DNA expert to testify at trial. Casey claims his trial counsel was ineffective for failing to call an expert witness to testify about DNA evidence. Casey contends that counsel's failure to call an expert witness was deficient performance rather than strategic performance.

Although Casey's K.S.A. 60-1507 motion alleged that his "[t]rial counsel failed to retain any expert witnesses in my behalf," the district court did not address this claim in its order summarily denying Casey's motion. The strongest evidence the State produced at trial was that biological evidence taken from B.H.'s neck and upper chest produced a DNA profile resulting in a match with a known DNA sample from Casey. The record reflects that in preparing for trial, Casey's trial counsel engaged the services of Genetic Technologies, Inc. to examine the biological evidence. The State moved for reciprocal discovery of any expert report prepared for Casey's defense. All we know after this point is that trial counsel declined to call a DNA expert as part of Casey's defense.

The State asserts that Casey's additional DNA testing would only risk "damning results." But this assertion is speculation not established by the record. There is little doubt that the State's DNA evidence pointed to Casey's guilt. Any failure to rebut this evidence, if rebuttal evidence was available, certainly prejudiced Casey's defense at trial. We do not know whether trial counsel's failure to present a DNA expert was reasonable strategy because counsel has never testified to explain why an expert witness was not called at trial. Thus, we are unable to say that the motion, files, and records of the case conclusively show that Casey is entitled to no relief on this claim.

Turning to Casey's claims of ineffective assistance of appellate counsel, he alleges two errors. First, Casey's K.S.A. 60-1507 motion argues that appellate counsel was ineffective for failing to appeal the trial court's ruling on statutory time limitations. This argument is not briefed on appeal. An issue not brief is deemed waived or abandoned. *Arnett*, 307 Kan. at 650. Second, Casey claims appellate counsel was ineffective for not raising trial counsel's ineffectiveness. Because we are remanding to appoint counsel for Casey and hold a hearing on the only viable claims of ineffective assistance of trial counsel, this action renders moot Casey's claim against his appellate counsel on this issue.

To sum up, we reverse the district court's summary denial of Casey's K.S.A. 60-1507 motion and remand for the district court to appoint counsel to represent Casey and to at least hold a preliminary hearing on two claims:  (1) Casey's claim that his trial counsel was ineffective in failing to investigate and call witnesses who could have corroborated Casey's testimony about his prior contacts with B.H. and (2) Casey's claim that his trial counsel was ineffective in failing to procure a DNA expert witness at trial. Unless the district court finds at the preliminary hearing that the motion, files, and records of the case conclusively show that Casey is entitled to no relief on these claims, then the district court should proceed to set the claims for an evidentiary hearing.

Reversed and remanded with directions.

14