IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,925

CHARLES DAWSON,
*Appellee*,

v.

BNSF RAILWAY COMPANY f/k/a BURLINGTON NORTHERN
AND SANTA FE RAILWAY COMPANY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Although the failure to file a claim within the statute of limitations is generally presented as an affirmative defense, in a cause of action based on the Federal Employers' Liability Act (FELA), the plaintiff must allege and prove that the action was filed within three years from the day the cause of action accrued.

2.

Under the discovery rule articulated in *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), and *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979), the FELA statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury that is the basis of the action.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 27, 2016. Appeal from Wyandotte District Court; DANIEL A. DUNCAN, judge. Opinion filed March 15, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed, and case is remanded to the Court of Appeals with directions.

1

*Marianne M. Auld*, of Kelly Hart & Hallman LLP, of Fort Worth, Texas, argued the cause, and *Andrew J. Ricke* and *Kenneth L. Weltz,* of Lathrop Gage, LLP, of Overland Park*,* and *Chad M. Knight*, of Knight Nicastro, LLC, of Kansas City, Missouri, were with her on the briefs for appellant.

*Steven L. Groves,* of Groves Powers L.L.C., of St. Louis, Missouri, argued the cause, and *Davy C. Walker*, of Law Offices of Davy C. Walker, of Kansas City, and *Daniel J. Cohen*, of Law Offices of Daniel J. Cohen, of St. Louis, Missouri, were with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.:  Charles Dawson filed a claim under the Federal Employers' Liability Act (FELA) against his employer, BNSF Railway Company (BNSF), alleging that BNSF's negligence caused his back injuries. The jury returned a verdict in Dawson's favor. The Court of Appeals vacated the verdict, holding that the district court should have granted BNSF's motion for judgment as a matter of law because Dawson's claims were untimely. We reverse and remand to the Court of Appeals for consideration of BNSF's remaining issues.

## FACTUAL AND PROCEDURAL BACKGROUND

Dawson began his employment with BNSF in 1979 as a switchman and a brakeman. Approximately two years later, he stopped working for BNSF and went to work at a tire store for six years. Dawson returned to BNSF in the late 1980s and was again employed as a switchman and brakeman. In 1995, Dawson began working as a conductor.

In 2001, Dawson informed his doctor, Dr. Gary Thomsen, that he was having lower back pain. Thomsen prescribed medications—Vioxx and eventually Celebrex—for pain management. Dawson again complained of back pain to Thomsen in 2003, 2004,

and 2005. Thomsen testified in a deposition that his records indicated his diagnosis for Dawson in 2004 was osteoarthritis of the lower back. At one of Dawson's visits with Thomsen in 2005, Thomsen ordered a lumbar X-ray. Dr. William Reed, a doctor whom Dawson began seeing in 2008, stated in a deposition that Thomsen's medical records indicated this X-ray revealed degenerative disc disease from L2 through L5. Dawson confirmed during his testimony that he had a diagnosis of degenerative disc disease, from L2 to L5, in 2005. But Dawson also testified that he did not remember Thomsen telling him that he had this diagnosis; he knew he had aches and pains, but he did not know what caused the symptoms and no one told him what disc disease was. Deposition testimony from Thomsen indicated that, from 2001 to 2006, Dawson's back pain seemed to be a mild, intermittent, and somewhat chronic low back issue and that Dawson was getting some benefit from the prescribed medications.

In June 2007, Dawson returned to Thomsen with more significant complaints of lower back pain. Thomsen stated that his medical records indicated Dawson had gone to the emergency room the day before with severe back pain. Thomsen ordered an MRI, which revealed that Dawson had "some disc bulging . . . at L3-L4 between the third and fourth lumbar back vertebrae, and . . . a tiny tear on the back side of that disc" as well as "some mention of right neuroforaminal stenosis secondary to the disc bulging." Dawson testified that his doctors did not inform him that he had disc disease, but that he had "a wore out back." Dawson also began seeing a chiropractor, Dr. Cherie Wickham, in June 2007.

In July 2007, Thomsen referred Dawson to Dr. Timothy Lair for further pain management. Dawson reported on a patient history form that he was unsure if work was the cause of his back problems. Dawson testified that he did not know what the cause of his problems was at that time. Lair began giving Dawson a series of epidural injections.

On March 19, 2008, Dawson called Lair's office and reported significant lower back and right leg pain. As a result, another epidural injection was scheduled.

Dawson testified that on March 21, 2008, the locomotive on which he was riding "bottomed out excessively." The engineer who was on the train with Dawson, Mark Shumate, also confirmed that they "hit a really rough spot in the track" and the "locomotive bottomed out." Dawson testified that on the next day, March 22, 2008, he was working and riding a train and "the engine felt like shocks were wore out." He stated that "[e]very time we hit a road crossing, it bottomed out real bad."

After these two train rides, Dawson completed an injury report for BNSF indicating that rough track had caused him to have back pain and right leg pain. When Dawson told his on-duty supervisor that he needed to turn in an injury report, the supervisor took Dawson to the emergency room. Dawson did not indicate that he had been having back pain before the rough engine rides. Dawson testified that he did not report this information the emergency room doctors because he knew that BNSF would have access to the emergency room records and he was afraid BNSF would pull him out of service if they knew about his previous pain.

After the rough train rides, BNSF referred Dawson to Reed. Reed began giving Dawson epidural injections until he released him to perform his regular duties at work in August 2008.

In February of 2009, Dawson was experiencing severe low back pain that radiated into the left leg to the knee. BNSF referred him to Dr. Harold Hess. Dawson told Hess that five days earlier, on January 29, 2009, he "experienced severe low back pain" when "riding over rough track." At trial, Dawson testified that he did not remember anything about the ride. Hess ordered an MRI, which revealed "left L2-L3, bilateral L3-L4

4

foraminal stenosis[,] [a]nd to a lesser extent, bilateral L4-L5 foraminal stenosis[,] . . . mild to moderate stenosis at L2-3, L3-4, and L4-L5." Hess stated in a deposition that this showed a change between Dawson's condition at the time of his MRI in 2008 and his condition at the time of the MRI in 2009. Hess also testified that, assuming Dawson's medical history, the "rough ride of January 29, 2009" was "temporally consistent" with being a "contributing cause to the symptom presentation that brought [Dawson] to see [him]." Hess performed an X-STOP surgery on Dawson in March 2009. Dawson experienced immediate relief and returned to work.

Dawson's pain relief was temporary, so he returned to Hess in 2010. Dawson testified that Hess referred him to Dr. Lasalle for further pain management and that at one of his appointments, Lasalle told Dawson that he had treated many railroad employees. According to Dawson, this was the first time he thought that his work on the railroad had contributed to his back injuries.

Because Dawson was still experiencing back pain, in January 2011, BNSF referred him to Dr. Glenn Amundson. In February 2011, Amundson performed a spinal fusion from L2 through L5 on Dawson. After surgery, Dawson returned to work at BNSF. He performed temporary light duty until December 2011, when the temporary position ended. In the same month, Amundson determined Dawson was at maximum medical improvement and permanently restricted him to a medium level of functioning, which was incompatible with his job as a conductor at BNSF. Consequently, Dawson did not return to work at BNSF.

Dawson filed an FELA action against BNSF in Wyandotte County District Court on February 22, 2011. He alleged that BNSF was negligent in the design, improper inspection, and poor maintenance of the locomotive seats and in its improper inspection and poor maintenance of the engine and the track. He asserted that this negligence led to

5

decades of exposure to unnecessary shocks, jarring, and vibration over rough tracks, which cumulatively caused his back injuries. Dawson also argued that rides on March 21, 2008; March 22, 2008; and January 29, 2009, further injured his spine.

BNSF moved for partial summary judgment. It claimed that Dawson's cumulative injury claim was untimely because it was not filed within three years of the time he knew or should have known of his injury and its cause. BNSF argued that, once the court dismissed the cumulative injury claim, it should order the remaining claims transferred to Sedgwick or Johnson County because Dawson lived in Johnson County and his "remaining claim is primarily based on an initial acute injury allegedly occurring March 21, 2008, in Sedgwick County, Kansas."

The district court denied the motion, ruling that the facts did not show as a matter of law that Dawson "knew his injuries were caused by his activities at work."

The case proceeded to trial. At the close of Dawson's case-in-chief, BNSF moved for a directed verdict (now called judgment as a matter of law) pursuant to K.S.A. 2011 Supp. 60-250(a), arguing, in part, that Dawson's cumulative injury claim was time barred. BNSF also argued that Dawson could not recover for his acute injury claims because they were precluded by the Locomotive Inspection Act and because Dawson had not proved BNSF's negligence. The district court denied the motion.

The jury concluded that Dawson's cumulative injury claim was timely, that BNSF had been negligent, and that BNSF's negligence had caused Dawson's injuries. The jury awarded Dawson $3,110,000 in total damages. BNSF moved for judgment notwithstanding the verdict (now called judgment as a matter of law) pursuant to K.S.A. 2011 Supp. 60-250(b) or the grant of a new trial or alteration or amendment of the judgment pursuant to K.S.A. 2011 Supp. 60-259 on the same arguments it presented in its

6

motion for directed verdict, along with new arguments that are not relevant to our review. The district court denied the motion.

BNSF appealed to the Court of Appeals, asserting a number of claims. The Court of Appeals concluded that the district court erred when it denied BNSF's motion for judgment as a matter of law because Dawson's cumulative claim was time barred. The panel also held that Dawson's acute injury claims were time barred. Finding these conclusions dispositive, the panel did not reach the other issues BNSF presented in its appellate brief. *Dawson v. BNSF Railway Co.*, No. 112, 925, 2016 WL 3031224 (Kan. App. 2016) (unpublished opinion).

Dawson petitioned for this court's review, arguing that the panel erred when it (1) disregarded some of Dawson's factual assertions; (2) concluded that his cumulative injury claim was untimely; and (3) concluded that his acute injury claims were untimely. He also asked us to address the following issues that BNSF raised in the Court of Appeals but that the panel did not consider:  Whether the Locomotive Inspection Act and Federal Railroad Safety Act precluded Dawson's claim; whether Dawson failed to present reliable expert causation evidence; whether Dawson's counsel's closing argument was improper; and whether the trial court erroneously admitted irrelevant and otherwise inadmissible documents and testimony. We granted review of all issues but address only the three alleged Court of Appeals errors.

ANALYSIS

*Panel's decision to disregard Dawson's factual assertions*

Before the Court of Appeals analyzed any of BNSF's issues, it explained that it would assume that Dawson had no support for some of his factual allegations:

7

"As an initial note, Dawson's brief appears to cite to his medical records to support some of his factual allegations. These citations do not comply with Supreme Court Rule 6.02(a)(4) (2015 Kan. Ct. R. Annot. 41). First, these citations do not pinpoint where in the respective medical records support for the fact appears; the citations merely refer to the records by doctor. Second, these medical records do not appear in the record. Without proper citations to the record or the inclusion of these medical records in the record on appeal, we presume Dawson has no support for these claims." *Dawson*, 2016 WL 3031224, at * 2.

Dawson argues it was error for the panel to disregard his factual assertions.

Interpretation of Supreme Court Rules is a question of law over which this court has unlimited review. *Fischer v. State*, 296 Kan. 808, 814-15, 295 P.3d 560 (2013).

Kansas Supreme Court Rule 6.03(a)(3) (2019 Kan. S. Ct. R. 35) requires an appellee's brief to support statements of fact in accordance with the rules outlined in Rule 6.02(a). Rule 6.02(a)(4) (2019 Kan. S. Ct. R. 35) provides that the "facts that are material to determining the issues to be decided . . . must be keyed to the record on appeal by volume and page number." The rule permits the court to "presume that a factual statement made without a reference to volume and page number has no support in the record on appeal."

At trial, the parties relied on Dawson's medical records to support their arguments. These records entered evidence by way of one exhibit—group exhibit 400. In their briefs to the Court of Appeals, Dawson and BNSF both cited these medical records as support for some of their factual assertions. BNSF offered pinpoint record citations to an exhibit list. That list described exhibit "463" as "Plaintiff's complete health care records and bills . . . ." This exhibit was never offered or admitted into evidence at trial and was not

8

included in the record on appeal. Dawson's brief offered no pinpoint citation to the record; it instead cited generally to medical records by doctor name.

Accordingly, the panel was correct when it concluded that Dawson failed to comply with Supreme Court Rule 6.02(a)(4) when he did not include a volume and page number with his citation to the medical records. However, we conclude that in this case, it was error to disregard the factual assertions supported by those records for a number of reasons.

Dawson correctly points out that BNSF also failed to comply with Rule 6.02(a)(4). Indeed, BNSF's brief directed the Court of Appeals to "exhibit 463" as support for some of its factual statements. But "exhibit 463" is not in the record. BNSF argues the citation to exhibit 463 is merely supplemental because it also cited deposition and trial testimony in support of his factual claims.

It is true that BNSF never cited to exhibit 463 in isolation, and the other sources it included with the exhibit citation support its factual assertions. However, some of the citations supply an incorrect page number to the record volume. Thus, as we see it, both parties violated Rule 6.02(a). Perhaps BNSF's violation was less egregious, but it was a violation nonetheless.

More importantly, Dawson properly requested that the district court add all exhibits to the record on appeal. This request was neither fulfilled nor included in the record on appeal. Dawson informed this court of his proper request in his petition for review, and BNSF acknowledged at oral argument Dawson's proper request and the failure of the clerk to fulfill that request.

9

Furthermore, as Dawson claims, the record on appeal supports all of his factual claims, even without the exhibits. The parties attached some of Dawson's medical records to pleadings they filed in the district court. These pleadings and their attachments are included in the record on appeal and support many of Dawson's factual assertions. And deposition testimony that was read to the jury and included in the record on appeal also supports Dawson's assertions. BNSF conceded this fact at oral argument.

Finally, we observe that BNSF, according to its own admission, would have suffered no prejudice if the Court of Appeals had considered all of Dawson's factual statements. BNSF has offered no argument suggesting that Dawson's claims were untrue. And in its briefs to this court and in oral argument, BNSF argued that the panel's result would have been the same even if it had considered all of the facts Dawson asserted.

Based on these particular circumstances, we conclude that the panel should have incorporated all of Dawson's factual claims in its analysis. We do not fault the panel for not doing so; the record in this case is voluminous and the Court of Appeals is not and should not be expected to sift through the record on appeal to find support for a party's assertions. Furthermore, the panel was likely unaware of Dawson's properly filed request in the district court because this request was not included in the record on appeal. Nevertheless, we now have more information regarding this case's history and have seen support in the record on appeal for Dawson's claims. Moreover, no party suffers prejudice if those assertions are considered. For these reasons, Dawson's factual claims should be incorporated into the timeliness analysis.

We elect not to remand this case to the Court of Appeals for consideration of this issue with all of Dawson's facts at its disposal. It is unclear which factual assertions the panel considered and which it did not. The panel noted, for example, that "Dawson argues his pain was worse after mowing," but Dawson cited to the medical records to

10

support this claim. *Dawson*, 2016 WL 3031224, at *3. Thus, if we remand the case to the Court of Appeals with directions to analyze this issue in light of all of Dawson's factual assertions, we risk remanding the case only to see exactly the same analysis. In the interest of judicial economy, we choose to avoid that potential result by reaching the merits of this issue now.

*Timeliness of Dawson's cumulative injury*

BNSF argues that, as a matter of law, Dawson's cumulative injury claim was untimely and, consequently, the district court erred when it disagreed and denied BNSF's motion for a directed verdict.

A motion for a directed verdict is now referred to as a motion for a judgment as a matter of law. This court's standard of review of a ruling on a motion for a judgment as a matter of law is the following:

> "'When ruling on a motion for directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict.'" *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 202, 4 P.3d 1149 (2000) (quoting *Calver v. Hinson*, 267 Kan. 369, Syl. ¶ 1, 982 P.2d 970 [1999]).

> "'The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see, *e.g., Smith* [*v. Kansas Gas Service Co.*]*,* 285 Kan. [33,] 40[,] 169 P.3d 1052 [2007] ("In other words, a motion for judgment as a matter of law must be denied when evidence exists upon which a jury could properly find a verdict for

11

the nonmoving party.").' *City of Neodesha v. BP Corporation,* 295 Kan. 298, 319-20, 287 P.3d 214 (2012)." *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 707, 317 P.3d 70 (2014).

Dawson's claim arises from the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 (2012) *et seq.*

Under 45 U.S.C. § 51:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

As provided in 45 U.S.C. § 56, "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." Although the failure to file a claim within the statute of limitations is generally presented as an affirmative defense, in an FELA cause of action, "the plaintiff must allege and prove that the action was filed 'within three years from the day the cause of action accrued.'" *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001) (quoting 45 U.S.C. § 56).

Generally, the cause of action accrues when the injury occurs. See *Matson*, 240 F.3d at 1235. But some injuries "cannot be discovered immediately" or have "an indefinite onset and progress[] over many years unnoticed." *Matson*, 240 F.3d at 1235. These are generally referred to as "cumulative injury" claims and, in these cases, courts

12

usually apply the discovery rule. See *Mix v. Delaware & Hudson Ry. Co.*, 345 F.3d 82, 90-91 (2d Cir. 2003).

The discovery rule comes from two United States Supreme Court cases: *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), and *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979). In *Urie*, the plaintiff filed an FELA claim against his employer after being exposed to silica for 30 years during the course of his employment. The employer argued that the claim was time barred because it began to accrue the first time the plaintiff was exposed to the silica dust, whether or not he was aware of the resulting injury. The Court disagreed, holding that an FELA action does not begin to accrue until the effects of an injury manifest themselves. *Urie*, 337 U.S. at 170.

In *Kubrick*, the plaintiff was injured as a result of a medical procedure. Three years later, when he learned that the procedure constituted malpractice, the plaintiff filed a claim against his treating physician under the Federal Tort Claims Act. The Court held that the claim was barred by the two-year statute of limitations. It implied that the discovery rule will toll a statute of limitations until a plaintiff has knowledge of an injury and its cause but explicitly held that "ignorance of [] legal rights" will not. *Kubrick*, 444 U.S. at 122.

Federal and state courts have interpreted these cases to hold that "[u]nder [the discovery] rule, a federal 'statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Matson*, 240 F.3d at 1235 (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 [10th Cir. 1994]); see also *Christiansen v. BNSF Ry. Co.*, No. 107,640, 2012 WL 5392184 (Kan. App. 2012). Some courts have read this rule to "impose[] on plaintiffs an affirmative duty to exercise reasonable

diligence and investigate the cause of a known injury." *Matson*, 240 F.3d at 1235; see also *Mix*, 345 F.3d at 88; *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990).

Based on this understanding of the law, BNSF argued to the district court that Dawson's claim was untimely because the evidence showed he knew or should have known of his injury and its cause more than three years before he filed his claim. The district court disagreed. It explained that it could not "say as a matter of law that [Dawson] knew his injuries were caused by his activities at work." Consequently, the court held that whether Dawson's claim was timely was a question for the jury. BNSF continues to argue that, as a matter of law, even if Dawson did not have actual knowledge of the cause of his injury, he had constructive knowledge of the cause earlier than three years before he filed his claim. BNSF argues this is true even when the court considers all of Dawson's factual assertions.

Typically, courts conclude that a plaintiff had constructive notice of an injury and its cause more than three years before filing an FELA claim when the evidence can support no other finding. In *Albert v. Maine Cent. R. Co.*, 905 F.2d 541 (1st Cir. 1990), the First Circuit Court of Appeals affirmed summary judgment for the employer when the employees had testified that, more than three years before they filed their claim, they believed that work had caused their injury. In *Matson*, the plaintiff claimed that years of exposure to vibrations had caused herniated and degenerated discs in his lower back. The Tenth Circuit affirmed summary judgment for the employer because, prior to three years before he filed his claim, the plaintiff attributed his back pain to his work on the railroad and his doctor discussed the potential that his work was causing his pain. 240 F.3d at 1236; see also *Crowther v. Consol. Rail Corp.*, 680 F.3d 95, 97-98 (1st Cir. 2012) (affirming judgment as a matter of law for defendant because evidence showed plaintiff believed work caused injury more than three years before claim filed); *Mix*, 345 F.3d at

14

87 (affirming summary judgment for employer when plaintiff had "'some belief'" health problems were related to his work outside of the three years before his claim was filed); *Fries*, 909 F.2d at 1094-97 (plaintiff should have known work caused injury more than three years before filing claim because frequency of ringing in ears increased toward end of work day, worsened throughout week, subsided after quiet on weekend; plaintiff felt terrible and needed silence after work; plaintiff and wife could not ascribe hearing loss to anything other than work); *Townley v. Norfolk & W. Ry. Co.*, 887 F.2d 498, 501 (4th Cir. 1989) (affirming directed verdict for employer when plaintiff admitted in a letter written four years before he filed his claim that work had caused his medical problems).

But courts tend to hold that the statute of limitations question is one for the jury when there is any evidence tending to suggest that the plaintiff could have attributed his or her injuries to something other than work. See *Smith v. States Marine Int'l, Inc.*, 864 F.2d 410 (5th Cir. 1989) (while plaintiff testified he experienced temporary hearing loss after exposure to loud noises at work, there was no evidence that he was aware of the correlation between loud noises and permanent hearing loss and he testified he attributed his hearing loss to old age); *Harvey v. CSX Transp., Inc.*, No. 92-1355, 1994 WL 168354 (4th Cir. 1994) (unpublished opinion) (although plaintiff admitted years earlier that work might have caused his hearing loss, doctor testified that people often do not consider hearing loss a problem until another factor, like age, aggravates ability to hear and employer's doctors had never detected hearing loss during physicals); *Shepard v. Grand Trunk Western R.R., Inc.*, 2010 WL 1712316 (Ohio App. 2010) (unpublished opinion) (one factor contributing to conclusion that summary judgment on plaintiff's FELA claim was improper was that plaintiff could have attributed breathing problems to many years of smoking).

And some courts have placed heavy emphasis on the absence of a doctor's diagnosis or connection between a plaintiff's injury and his or her work when concluding

15

that the statute of limitations is a jury question. See *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 483 (1st Cir. 2010) (whether plaintiff should have known he had epicondylitis caused by work before his doctor gave him this diagnosis was factual question); *Dubose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1030-31 (5th Cir. 1984) ("[w]hen a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury"); *Nichols v. Burlington N. & Santa Fe Ry. Co.*, 56 P.3d 106 (Colo. App. 2002) (reversing summary judgment on statute of limitations question because plaintiff had only occasional pain at first and doctor testified he did not consider plaintiff to have permanent injury or injury caused by work); *Shepard v. Grand Trunk W. R.R. Inc.*, No. 92711, 2010 WL 1712316 (Ohio Ct. App. 2010) (summary judgment improper in part because had plaintiff seen defendant's medical expert, expert would not have told him his cancer was related to asbestos exposure).

Dawson cites evidence suggesting that there were other causative factors to which he could have attributed his back pain, including age, activities of daily living, and yard work. Dawson also testified that, before he started working for BNSF in 1979, he injured his back four times while in the military and that he went to the emergency room in 1988 when he fell off of a truck and onto his back. He further testified that he had raced cars for 20 years, smoked cigarettes for 24 years, and, by February 2008, he was 58 years old. Doctors testified that all of these things could contribute to back injury symptoms. Dawson's doctors never connected Dawson's work to his injury, and there was evidence that they told him his back was simply "wore out." Both Thomsen and Lair state in their in depositions that they would not have opined as to the cause of Dawson's injury if Dawson had asked.

16

BNSF argues that this evidence is inconsequential. It argues that, "[b]ecause the relevant inquiry is whether the plaintiff exercised reasonable diligence to investigate the cause of his known injury, Dawson's subjective testimony about what he believed his injury to be and what his doctors told him about that injury is irrelevant." BNSF also states that "the fact that Dawson's doctors did not or would not link his condition to work plays no part in the analysis because a formal medical diagnosis is not required" and that Dawson's argument "that his treating doctors may not have given him causation opinions even if asked . . . rings hollow because Dawson did obtain those opinions from treating doctors in order to offer them at trial."

We reject BNSF's arguments. First, it is not true that "the relevant inquiry is whether the plaintiff exercised reasonable diligence to investigate the cause of his known injury." This may be part of the relevant inquiry under certain facts, but it is not the only relevant inquiry. The discovery rule does not require that a plaintiff lose the right to pursue a claim based solely on the failure to investigate the cause. If it is not possible for the plaintiff to know of or determine the connection, under the discovery rule, the action does not begin to accrue. *Urie*, 337 U.S. at 170 (statute of limitations did not begin to accrue until there was reason for plaintiff to suspect injury); see also *Kubrick*, 444 U.S. at 123-24 (justifying the requirement that plaintiff is diligent in discovering that doctor's actions were negligent when there is a "generally applicable standard of care" and "competent advice" would be available to plaintiff). Furthermore, while we agree that a medical diagnosis is not required to begin the running of the statute of limitations, the lack of a medical diagnosis can certainly be a factor in cases where the plaintiff's constructive knowledge of an injury or its cause is an issue. Finally, BNSF's claim that Dawson's argument that his doctors would not have opined as to the cause of his injuries "rings hollow" is contrary to the evidence. Even if those doctors were able to eventually discern the cause of the injury, this does not mean they would have offered causation opinions to Dawson at an earlier time. The doctors testified that they would not have

17

opined on whether work caused Dawson's injury if he had asked during the course of his treatment.

Contrary to BNSF's position, we find that Dawson presented some evidence that he neither knew nor should have known of the cause of his injury until he was within the three years before he filed his claim. Accordingly, reasonable minds could reach different conclusions as to whether Dawson's claim was timely. See *Bussman*, 298 Kan. at 706-07. The district court did not err when it submitted the statute of limitations question to the jury. Because we conclude that the cumulative injury was not time barred as a matter of law, we need not address the Court of Appeals' conclusion that claims for the acute injuries were also time barred as a continuation of the cumulative injury.

We affirm the district court's denial of BNSF's directed verdict. We reverse the Court of Appeals' conclusion that both Dawson's cumulative claim and his claims of aggravated injury were untimely as a matter of law. We remand the case to the Court of Appeals for consideration of BNSF's remaining issues.

LUCKERT, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,925 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.