NOT DESIGNATED FOR PUBLICATION

No. 126,848

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WALTER C. SPENCER and CHERYL J. SPENCER,
*Appellants/Cross-appellees*,

v.

GARY ZIEGLER, et al.,
*Appellees/Cross-appellants*.

MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Oral argument held on November 12, 2024. Opinion filed December 13, 2024. Affirmed.

*Mark H. Epstein*, of The Epstein Law Firm, LLC, of Leawood, for appellants/cross-appellees.

*Jason B. Prier*, of The Prier Law Firm, L.L.C., of Lawrence, and *Todd N. Thompson*, of Thompson-Hall, P.A., of Lawrence, for appellees/cross-appellants.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: This appeal arises out of a dispute between neighbors. In 1988, Walter and Cheryl Spencer obtained ownership of land on Highway 40 in Douglas County and continue to reside on their property. The Spencer property is referred to by the parties as the East parcel. In 2020, Gary and Stephanie Ziegler obtained ownership of land adjacent to the Spencer's real estate and operate a business on their property. The Ziegler property is known as the West parcel. At one time, the land now owned by the Spencers and the Zieglers was under common ownership.

1

Shortly after the Zieglers purchased the West parcel, they built a privacy fence between the two parcels. To determine the boundary line between the two parcels, they had a survey performed. Based on the results of the survey, the Zieglers believed that a fence that had previously been built by Spencer encroached upon their land. Although the Zieglers approached the Spencers about removing the existing fence and replacing it with a new fence on the property line determined by the survey, they were unable to reach an agreement. As a result, the Zieglers took unilateral action to remove the fence constructed by the Spencers.

Unfortunately, the dispute between the neighbors escalated and resulted in litigation. In this case, the Spencers sought a temporary restraining order, a preliminary injunction, and a permanent injunction. In addition, the Spencers asserted claims against the Zieglers for quiet title by adverse possession, trespass, conversion, and tort of outrage. In response, the Zieglers filed a counterclaim seeking a declaratory judgment and asserting claims against the Spencers for trespass, nuisance, and tort of outrage.

Following a bench trial, the district court determined that there is an easement on the Spencers' land that is subject to a driveway easement that benefits the West parcel. Later, the district court held a jury trial on the remaining issues. After evidence was presented but before submitting the parties' claims to the jury, the district court dismissed the Zieglers' outrage claim against the Spencers. After considering the evidence, the jury found in favor of the Spencers on most of their claims. In addition, the jury found in favor of the Zieglers on their intentional nuisance counterclaim, which was based on their assertion that the Spencers had interfered with their use of the driveway easement.

On appeal, the Spencers contend that the district court erred in finding that either an express easement or quasi-easement exists on their property. The Zieglers filed a cross-appeal in which they contend that the district court erred in denying their motion for judgment as a matter of law on the Spencers' claim of adverse possession and in

2

submitting the Spencers' tort of outrage claim to the jury. For the reasons set forth in this opinion, we conclude that the district court did not commit reversible error. Thus, we affirm the district court's final judgment.

FACTS

From at least 1945 to 1967, the land now owned by the Spencers and the land now owned by the Zieglers was owned by Walter and Grace Tidd. In May 1967, the Tidds sold a tract of property—known as the East parcel—to Dwight and Mary Irene Henry. A month later, the Tidds sold an adjacent tract of property—known as the West parcel—to S.T. and Evelyn Baugher.

In the recorded deed from the Tidds to the Henrys, the following language appears:

> "Subject to an easement given by the grantors herein to one Alma Decker, and her assigns, of the right to use that part of the driveway as the same is now located on the within described tract, which driveway gives said Alma Decker access to the property immediately adjacent to and west of the property above described; also subject to an easement between the grantors herein and the said Alma Decker, granting to Alma Decker, and her assigns, the right to use and maintain laterals to a septic tank located on the property herein described."

Although the parties have speculated that Alma Decker may have been a tenant, her relationship to the Tidds or her interest in the property is unknown. It is undisputed that Decker was never an owner of the property. Nor is there any recorded assignment of rights in the record from Decker to anyone else. It is also undisputed that the current driveway configuration is substantially the same as it was when the Henrys purchased the East parcel. This is also confirmed by the aerial photographs of the two parcels—taken from 1966 to 2022—that are part of the record on appeal.

3

Similarly, in the recorded deed from the Tidds to the Baughers, the sellers granted the buyers:

"[T]he right to use that part of [the] driveway as the same is now located on [the East parcel], the same to be used in common with [the Tidds] and also [the Baughers] shall have the right to use and maintain laterals to septic tank as the same are now located on the [East] parcel."

On March 15, 1978, the Baughers conveyed the West parcel to Robert Hughes and Jack Sharp. The deed—which was recorded on June 16, 1986—also acknowledged that it conveyed "any right grantor may have to that part of the driveway as the same is now located on [the East parcel]." Subsequently, Michael and Doris Gasper purchased the East parcel from the Henrys free and clear of the septic easement in an agreement dated September 24, 1982.

In the written agreement, the Henrys, the Gaspers, the Hughes, and the Sharps agreed—among other things—to terminate the septic easement on the East parcel as identified in the 1967 deeds from the Tidds to the Henrys and from the Tidds to the Baughers. Moreover, the parties expressly acknowledged the existence of the driveway easement, stating that the Hughes and the Sharps had purchased the West parcel "[t]ogether with any right grantor may have to use that part of the driveway as the same is now located on [the East parcel]. . . ." The parties also acknowledged that the agreement would "inure to the benefit of and be binding upon the heirs, devisees, legatees, administrators, executors, successors, personal representatives, trustees, and assigns of the parties and persons consenting thereto."

On November 23, 1988, the Gaspers quitclaimed the East parcel to the Spencers. The quitclaim deed—which was recorded with the register of deeds on December 7, 1988—does not mention a driveway easement. About a month later, the Spencers also obtained a trustee's deed for the East parcel. The recorded trustee's deed also did not

4

include any language about a driveway easement. The Spencers continue to own and reside on the East parcel.

The Zieglers did not buy the West parcel until October 2020. They obtained the land from Rodney and Kelly Eisenbarger by way of a general warranty deed. Similar to the quitclaim deed the Spencers received when they bought the East parcel, the recorded general warranty deed for the West parcel does not refer to an easement. The Zieglers operate a business on the West parcel but do not reside there.

When the Spencers moved onto the East parcel in 1988, there was a barbed-wire fence separating the two parcels. According to Walter Spencer, the barbed-wire fence had been there between 80 and 100 years. In 1990, he replaced 110 feet of the fence with a 6-foot-tall commercial plastic-slatted, chain-link fence. The new fence was installed about 6 inches east of the barbed-wire fence. Believing the fence was on their property, the Spencers maintained and used all the property up to the fence line for about 30 years.

Shortly after the Zieglers purchased the land next door to the Spencers, a dispute began over the location of the property line. Because the Zieglers wanted to put up a privacy fence around much of their property, they obtained a survey that suggested the existing fence built by the Spencers in 1990 was encroaching on their property. As a result, the Zieglers informed the Spencers that they wanted to take down the existing fence and replace it with a new one on the boundary line identified in the survey. In response, the Spencers advised the Zieglers that they had occupied and maintained all the property inside the existing fence for more than 30 years and, as a result, claimed the disputed area through adverse possession.

After various communications—some of which were hostile in nature—between the Zieglers and the Spencers as well as their attorneys, the Zieglers tore down the existing fence and fence posts on March 19, 2021. About two weeks later, on March 31,

5

2021, the Spencers filed a "Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Quiet Title by Adverse Possession, Trespass and Conversion" against the Zieglers. In April 2021, the district court entered a temporary restraining order to preserve the status quo during the pendency of this action. Later, in an amended petition, the Spencers added a tort of outrage claim.

In response, the Zieglers denied the Spencers' claims and filed a counterclaim. In their counterclaim, the Zieglers sought a declaratory judgment and asserted trespass, nuisance, and intentional infliction of emotional distress against the Spencers. In addition, the Zieglers sought and obtained a temporary restraining order enjoining the Spencers from blocking the driveway and from communicating with or harassing the Zieglers and their customers.

On May 31, 2022, the Zieglers moved for partial summary judgment on the issue of the existence of the driveway easement that the district court denied. After completion of discovery, the district court conducted a bench trial on November 29, 2022, to consider the existence of an enforceable driveway easement. Besides the parties, the Zieglers presented Professor Andrea Boyack of the Washburn University School of Law as an expert on property law. Together with her testimony, Professor Boyack's written report detailing her opinions was admitted into evidence at the bench trial.

Professor Boyack testified that she had examined the documents relating to the chain of title for both the East parcel and the West parcel. She had also reviewed the 1982 agreement regarding the existing easements as well as historical aerial photographs of the property. Based on her review, Professor Boyack rendered the opinion that "there is an easement on the east tract, that is the burden parcel benefiting the west parcel of that appurtenant easement for use of the driveway." Boyack found the easement was created "on the very clear reference in the deed from the Tidds to the Henrys in May of 1967 that references an easement given from grantors to Alma Decker."

On cross-examination, Professor Boyack generally agreed that an owner of real property cannot create an easement when he or she owns both parcels. She explained that this was true "[u]nless the owner has conveyed the possessory interest to someone else." Professor Boyack also agreed that it can be assumed from the facts that Decker probably had some possessory right to the West parcel since the easement was reserved to her. Additionally, Professor Boyack opined that a quasi-easement could have been created even if the Tidds owned both parcels.

Walter Spencer also testified at the bench trial. He noted that the title documents he received when he purchased the East parcel did not reference a driveway easement. He also testified that he knew nothing about the easement. Moreover, Spencer testified that he did not recall any of his prior neighbors ever using his driveway with any regularity.

On January 24, 2023, the district court entered a memorandum decision and journal entry in which it determined that "[t]he East/Spencer parcel is subject to a driveway easement that benefits the West/Ziegler parcel." In reaching this determination, the district court found:

- The 1967 deed from the Tidds to the Henrys created an express and appurtenant driveway easement on the East parcel to allow for access to the West parcel.
- In the alternative, the evidence established a quasi-easement for the driveway that ripened into an implied easement by reservation or grant at the time the Tidds conveyed the East parcel to the Henrys in 1967.
- The evidence satisfied the "apparent, continuous, and necessary" requisites for an implied easement.
- Even though not all of the recorded instruments in the chain of title of these parcels mention a driveway easement, there is no evidence that the express or implied driveway easement has been terminated.

7

- The Spencers' apparent lack of actual knowledge of the driveway easement does not relieve them of their constructive notice of the easement. The basis for its finding is that the easement was recorded as a matter of public record.

On June 20, 2023, the case proceeded to a two-day jury trial on the remaining claims of adverse possession, trespass, outrage, conversion, and nuisance. Walter Spencer testified, and nine exhibits were admitted into evidence in support of his testimony. Furthermore, Gary and Stephanie Ziegler testified, and 67 exhibits were admitted into evidence in support of their testimony.

At trial, the district court denied the Zieglers' motion for judgment as a matter of law on the Spencers' adverse possession claim. The district court did not allow the Zieglers' tort of outrage claim against the Spencers to go to the jury. And the district court instructed the jury that there was a driveway easement on the Spencers' property for the purpose of their nuisance claim.

After deliberation, the jury returned a verdict in favor of the Spencers on most of their remaining claims against the Zieglers. The jury also returned a verdict in favor of the Zieglers on their claim of nuisance against Walter Spencer. The jury's verdict was accepted by the district court in a journal entry entered on July 26, 2023. In the journal entry memorializing the jury's verdict, the district court found:

- The Spencers acquired the disputed portion of land inside their fence line through adverse possession.
- The Spencers were awarded $1 in damages on their claim of trespass against Ziegler Enterprises, L.L.C.

8

- On their claim of conversion against Ziegler Enterprises—which related to the removal of the existing fence—the Spencers were awarded $32,000 in damages.

- The Spencers were not entitled to relief on their conversion claim against Gary Ziegler.

- On their tort of outrage claim against Ziegler Enterprises, the Spencers were awarded $6,300 in damages.

- The Spencers are not entitled to judgment against Gary Ziegler on their tort of outrage claim.

- On their claim of intentional nuisance, the Zieglers were awarded damages in the sum of $15,000 against Walter Spencer.

Thereafter, the Spencers filed a timely notice of appeal, and the Zieglers timely filed a cross-appeal.

ANALYSIS

*Issues Presented*

On appeal, the Spencers raise two issues. First, whether the district court erred in finding that there is an express easement to use their driveway to access the Zieglers' property. Second, whether the district court erred in ruling in the alternative that there is a quasi-easement to use their driveway to access the Zieglers' property. Moreover, the Zieglers assert two issues in their cross-appeal. First, whether the district court erred in denying their motion for judgment as a matter of law on the Spencers' adverse possession claim. Second, whether the district court erred in allowing the Spencers' tort of outrage, or intentional infliction of emotional distress claim, to be submitted to the jury.

9

*Existence of an Express Easement*

In determining whether the 1967 deed from the Tidds to the Henrys created an express easement, our review is unlimited. Moreover, in interpreting a written instrument and determining its legal effect, we are not bound by the district court's interpretation of the written instrument. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021). Our primary responsibility in interpreting written instruments is to determine the parties' intent. If the terms of the written instrument are clear and unambiguous, we are to determine the parties' intent from the plain language used in the written instrument without applying rules of construction or resorting to parol evidence. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018); *Schmitendorf v. Taylor*, 58 Kan. App. 2d 292, 302, 468 P.3d 796 (2020).

Moreover, an interpretation of a written instrument "'should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.' [Citations omitted.]" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). "'It is the duty of courts to sustain the legality of [written instruments] in whole or in part when fairly entered into . . . rather than to seek loopholes and technical legal grounds for defeating their intended purpose.'" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005).

An easement is a nonpossessory legal property right to enter or use the real property of another person or entity. *Ross v. Nelson*, 319 Kan. 266, 274, 554 P.3d 636 (2024) (citing *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 105, 134 S. Ct. 1257, 188 L. Ed. 272 [2014]). As the Kansas Supreme Court has explained, easements grant an interest which

10

"'(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;

"'(b) entitles him to protection as against third persons from interference in such use or enjoyment;

"'(c) is not subject to the will of the possessor of the land;

"'(d) is not a normal incident of the possession of any land possessed by the owner of the interest; and

"'(e) is capable of creation by conveyance.'" *Smith v. Harris*, 181 Kan. 237, 246-47, 311 P.2d 325 (1957) (quoting Restatement of Law, Property, Servitudes, § 450, p. 2901).

In other words, easements are deemed to be a permanent interest to use or enjoy real property owned by another and are usually created by a deed or other sufficient writing. Although easements may also be created implicitly under certain circumstances, an express easement is either granted or reserved by the grantee in a written document. See *Stroda v. Joice Holdings*, 288 Kan. 718, 721, 207 P.3d 223 (2009).

Here, it is undisputed that the Tidds owned both the East parcel (now owned by the Spencers) and the West parcel (now owned by the Zieglers) prior to May 2, 1967. On that date, the Tidds conveyed the East parcel to the Henrys by a general warranty deed. Material to this case, the deed stated:

> "*Subject to an easement given by the grantors to one Alma Decker, and her assigns, of the right to use that part of the driveway as the same is now located on the within described tract, which driveway gives said Alma Decker access to the property immediately adjacent to and west of the property above described*; also subject to an easement between the grantors herein and the said Alma Decker, granting to Alma Decker, and her assigns, the right to use and maintain laterals to a septic tank located on the property herein described." (Emphasis added.)

Like the district court, we find the plain language used in the Henry deed to be sufficient to create or reserve an express easement allowing the driveway located on the East parcel to be used to access the West parcel. On its face, the deed provides that the

11

East parcel was being conveyed to the Henrys "[s]ubject to an easement . . . to use that part of the driveway . . . which driveway gives . . . access to the property immediately to and west of the property . . . ." It is undisputed that the West parcel now owned by the Zieglers is adjacent to the East parcel now owned by the Spencers.

We find it significant that the explicit language of the 1967 deed grants or reserves the easement not only to "Alma Decker" but also grants or reserves to "her assigns" the right to use the driveway to access the West parcel. We also note that the deed granted or reserved an easement to "Alma Decker, and her assigns . . . to use and maintain laterals to a septic tank located on" the East parcel. However, on September 24, 1982, the septic easement was expressly terminated in an agreement signed by those owning the two parcels at the time. On the other hand, we find nothing in the record on appeal to show that the driveway easement granted or reserved in the 1967 deed has ever been terminated.

The Spencers argue that an express easement could not have been created because the Tidds owned both parcels at the time the deed was executed. In support of this argument, they cite *Van Sandt v. Royster*, 148 Kan. 495, 499, 83 P.2d 698 (1938), which found—among other things—that the owner cannot have an easement in his or her own land. Here, of course, the Tidds did not continue to own either parcel after they conveyed the East parcel to the Henrys on May 2, 1967, so the Tidds no longer had an interest in the land on which they created or reserved the driveway and septic easements.

On this issue, we also find the expert report of Professor Andrea Boyack of the Washburn University School of Law—which was admitted into evidence at the bench trial—to be consistent with our determination that the express language of the 1967 deed created or reserved a driveway easement. Although Professor Boyack recognized the general rule regarding an owner not having an easement on his or her own land, she opined that when the Tidds deeded the East parcel to the Henrys, they no longer owned

12

both parcels of land. As a result, the language of the deed that explicitly stated that it was "[s]ubject to an easement given by the grantors to one Alma Decker, and her assigns" was sufficient to create "an express reservation of a right of way easement over the driveway even had there been existing use that was intended to continue."

Accordingly, we find that the Spencers' argument that the Tidds could not have created or reserved an express easement in the 1967 deed fails for several reasons. First, the argument ignores the fact that the driveway easement was expressly created or reserved in a deed conveying the East parcel to the Henrys. The right to use the driveway for access to the West parcel was expressly stated in the deed and the use of the term "easement"—which is used not only to create or reserve the driveway easement but also the septic easement—supports a finding that one was indeed created or reserved. See *Gilman v. Blocks*, 44 Kan. App. 2d 163, 172, 235 P.3d 503 (2010). So, the Tidds were not attempting to create or reserve an easement for themselves, but expressly reserved the driveway easement so that the land conveyed to the Henrys would be subject to this easement.

We also find that the express easement created or reserved for use of the driveway was an appurtenant easement that benefits the land and was not simply a license granted to Alma Decker. See *Smith*, 181 Kan. at 247 (an appurtenant easement "'passes to the heirs or assigns of the owner of the land, such as by a conveyance or devise of the dominant estate'"). Here, the plain language of the 1967 deed conveyed the East parcel to the Henrys "[s]ubject to an easement given by the grantors herein to one Alma Decker, and her assigns . . . ." As a result, we find that the parties did not intend to limit the "the right to use" the driveway only to Alma Decker. Instead, based on the language used by the parties, we find that also granting this right to Decker's "assigns" was sufficient to establish an easement that benefitted the land. See *Universal Motor Fuels, Inc. v. Johnston*, 260 Kan. 58, 64, 917 P.2d 877 (1996) (holding the use of "successors or

13

assigns" was sufficient to reflect the intent of the parties that an easement is appurtenant and passes to a landowners' successors).

The Spencers also argue that an easement was not created because it is unknown who Alma Decker was and what interest—if any—she had in the land. Although we could speculate what interest Decker might have had, we need not do so. Instead, our decision is based on the plain and unambiguous language of the 1967 deed from the Tidds to the Henrys. As discussed above, the Spencers contend that the parties intended to grant or reserve a license for only Decker to use the driveway. But we find this contention to be contrary to the express language used by the parties in the 1967 deed. Again, the deed refers not only to Decker but also to her "assigns," which shows that the parties did not intend to grant only Decker the right to use the driveway.

Once the appurtenant easement was created and recorded, it continues to run with the land unless expressly terminated by agreement. When the written instrument creating or reserving the easement is properly recorded, it provides notice—either actual or constructive—to subsequent landowners. See *Horney v. Buffenbarger*, 169 Kan. 342, 348-49, 219 P.2d 345 (1950) (holding that a purchaser's failure to examine the records does not relieve him of constructive notice of what is in the records); *Federal Savings & Loan Insurance Corp. v. Urschel*, 159 Kan. 674, 682, 157 P.2d 805 (1945) ("'Notice that the land is burdened with an easement may be imputed to the purchaser by a properly recorded instrument in which the easement is granted.'"); *Baraban v. Hammonds*, 49 Kan. App. 2d 530, 541, 312 P.3d 373 (2013) (when purchasing real estate, if a person has knowledge of facts that a prudent person would investigate further, the person is deemed to have constructive notice of the facts that would have been revealed by that investigation); *First National Bank and Trust Co. v. Wetzel*, 42 Kan. App. 2d 924, 930, 219 P.3d 819 (2009) (a purchaser of real property is bound to take notice of county records—which is considered public notice—regarding facts affecting the title to the property).

14

Here, it is undisputed that the 1967 deed from the Tidds to the Henrys was filed with the register of deeds on May 29, 1967. As a result, the recorded deed provided the Spencers with notice of the driveway easement. We also note that the express easement in the Henry deed appears in the chain of title for the East parcel and has not been terminated, so the East parcel remains subject to the express driveway easement. We note that the 1982 agreement—which was also recorded with the register of deeds—would have also provided the Spencers with notice of the driveway easement.

Likewise, Kansas courts consider five factors in determining whether the parties intended to create an easement or a license. These factors are: the manner in which the right is created; the nature of the right created; the duration of the right; the amount of consideration—if any—given for the right; and the reservation of power to revoke the right. *Gilman*, 44 Kan. App. 2d at 173 (quoting Bruce & Ely, The Law of Easements & Licenses in Land § 1:5, pp. 1-12 to 1-17). Applying these factors to this case, we again find it significant that the express language used in the 1967 deed from the Tidds to the Henrys used the word "easement" and not only granted Alma Decker the right but also granted "her assigns" the right to use the driveway on the East parcel to obtain access to the West parcel. Although the label given by the parties does not dictate the legal effect, the use of the word "easement" weighs in favor that one exists. See 44 Kan. App. 2d at 172.

Likewise, the nature of the right created or reserved in the 1967 deed was the right to use the driveway on the East parcel driveway to access the West parcel. The deed also granted or reserved an "easement" for "Alma Decker, and her assigns, the right to use and maintain laterals to a septic tank located on the property . . . ." Both of these rights affecting the East parcel are explicitly related to the use and enjoyment of the West parcel. This again indicates that the parties intended to create or reserve easements rather than merely licenses.

15

The language used by the parties in the 1967 deed did not set a duration for the right to use the driveway or the septic system. Instead, the parties used the words "Alma Decker, and her assigns," which suggests succession and is indicative of an easement. Here, there is nothing in the record regarding consideration. Furthermore, the 1967 deed does not contain language reserving the right to revoke the use of the driveway, and the absence of such language also indicates the parties' intent to create or reserve an easement rather than a license. See 44 Kan. App. 2d at 173. Consequently, we find that the plain language of the 1967 deed expressly created or reserved a driveway easement on the East parcel for access to the West parcel and did not grant merely a license to Decker.

Next, the Spencers argue that the 1967 deed created or reserved an "easement in gross" rather than an appurtenant easement. In support of this argument, the Spencers point to the fact that Alma Decker was named personally several times in the deed. Similar to a license, an "easement in gross" is merely a "'personal interest in or right to use land of another. It is not supported by [a] dominant estate, but it is attached to, invested in, the person to whom it is granted.'" *Allingham v. Nelson*, 6 Kan. App. 2d 294, 296, 627 P.2d 1179 (1981) (quoting 25 Am. Jur. 2d, Easements and Licenses, § 12, pp. 426-27 [1966]). Even so, Kansas law favors the interpretation of an easement as appurtenant whenever there is a related parcel of land, and the easement is related to the use and enjoyment of that parcel of land. *Allingham*, 6 Kan. App. 2d at 296.

In *Allingham*, our court explained:

"'Whether an easement in a given case is appurtenant or in gross depends mainly on the nature of the right and the intention of the parties creating it. If the easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. Easements in gross are not favored by the courts, however, and an easement will never be presumed as personal when it may fairly be construed as

16

appurtenant to some other estate. If doubt exists as to its real nature, an easement is presumed to be appurtenant, and not in gross.'" 6 Kan. App. 2d at 296 (citing 25 Am. Jur. 2d, Easements and Licenses § 13, p. 427 [1966]).

Once again, even without a presumption of an appurtenant easement, we find the language used by the parties in the 1967 deed to be sufficient to expressly create or reserve an appurtenant driveway easement. This easement on the East parcel was appurtenant because it related to the use and enjoyment of an adjacent parcel of land—the West parcel. Not only was the easement referenced in the 1967 deed, but it was also mentioned in subsequent documents filed with the register of deeds.

Specifically, we note that both the driveway easement and the septic easement were referenced by the parties in the deed conveying the West parcel to the Baughers in June 1967. This also supports our interpretation that the Tidds created an appurtenant driveway easement. In addition, the aerial photos taken from 1966 to 2022 that were admitted into evidence at the bench trial depict a driveway continuously existing on the East parcel that is connected to the West parcel. Also, the record on appeal contains the 1982 written agreement—signed by the owners of the East parcel and the West parcel at the time—in which the septic easement was terminated. It is apparent from the text of this agreement that the subsequent owners of both parcels understood that the easements created or reserved in the 1967 deed were appurtenant and ran with the land.

*Existence of Quasi-Easement*

The Spencers also contend that the district court erred in ruling in the alternative that a quasi-easement—that became an implied easement—exists upon the East parcel for use of the driveway to access the West parcel. This issue presents a mixed question of fact and law. When reviewing a mixed question of fact and law, we apply a bifurcated standard of review. We review the district court's factual findings under a substantial competent evidence standard. However, our review of the district court's conclusions of

law based on those facts is unlimited. *DeBey v. Schlaefli*, 56 Kan. App. 2d 813, 817, 437 P.3d 1011 (2019).

Kansas courts have held that when an owner uses one part of his land for the benefit of another part, a quasi-easement is created. *Smith*, 181 Kan. at 248; *Van Sandt*, 148 Kan. at 499; *DeBey*, 56 Kan. App. 2d at 817-18. When a grantor conveys a portion of his or her property subject to an existing use on the retained parcel or when a grantor conveys a portion of the property together with an existing use on the retained parcel, a quasi-easement may be implied. To establish a quasi-easement, the following must exist: (1) common ownership at the time the use began; (2) the grantor intended for the use to continue at the time the property ownership was divided; and (3) the use was necessary and apparent or visible on the property. See *Stroda*, 288 Kan. at 721-22.

Likewise, a quasi-easement "may ripen into an easement upon the landowner's transfer of either the quasi-servient tenement or the quasi-dominant tenement." Bruce, Ely, & Brading, The Law of Easements & Licenses in Land, § 4:15 (2024). When the landowner sells the quasi-dominant tenement, "the quasi-easement then becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property." *Debey*, 56 Kan. App. 2d at 818. Yet strict necessity is not required in order to find the existence of an implied easement. Rather, "an implied easement by reservation or grant is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land." *DeBey*, 56 Kan. App. 2d at 818.

Here, we find substantial competent evidence in the record on appeal to support the district court's alternative determination that there was a quasi-easement that became an implied easement. The record reflects that prior to May 2, 1967, the Tidds owned the entire property that would become the East parcel and the West parcel. The Tidds' property included the driveway at issue prior to the time the parcels were divided and—

based on the aerial photographs that were admitted into evidence—the driveway's configuration has remained essentially the same since at least 1966. At the time the Tidds conveyed the East parcel, the driveway provided access between the East parcel and the West parcel. The driveway also allows drivers to access the property from Highway 40 using either the portion of the driveway on the East parcel or the West parcel.

Although the use of the driveway on the East parcel is not strictly necessary to access the West parcel, it may reasonably be inferred from the evidence in the record that the use of the driveway increases the ease and convenience for users of the West parcel. As a result, we conclude that the district court's findings are based on substantial competent evidence in the record and that they support the district court's legal conclusions regarding the existence of a quasi-easement that became an implied easement.

We also note that our opinion is consistent with Professor Boyack's opinion that even if the 1967 deed did not create an express easement, "it clearly provides notice of the existence of a quasi-easement benefiting the parcel then possessed by Decker." In addition, she opined that the 1967 deed provides evidence of the Tidds' intent that the use of the driveway by the owners of both parcels should continue. Professor Boyack concluded that "[b]ecause there was notice to the grantee and there was grantor intent for the use to persist, delivery of the Henry Deed severing ownership of the two parcels made what was previously a quasi-easement a legal, appurtenant driveway easement."

*Denial of Motion for Judgment as a Matter of Law*

In their cross-appeal, the Zieglers contend that the district court erred in denying its motion for judgment as a matter of law on the Spencers' claim of adverse possession. Our review of a district court's denial of a motion for judgment as a matter of law is de novo. In reviewing the district court's decision, we must determine "whether evidence

19

existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.' [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

When ruling on a motion for judgment as a matter of law, a district court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. A district court should deny a motion for judgment as a matter of law if reasonable minds could reach different conclusions based on the evidence. On appeal, we apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019).

K.S.A. 60-503 provides the statutory elements of adverse possession. The statute provides that "[n]o action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years." A party claiming adverse possession must establish each of the elements by clear and convincing evidence. *Ruhland v. Elliott*, 302 Kan. 405, 410, 353 P.3d 1124 (2015).

Adverse possession should not be based on inference, and "'[e]very presumption is in subordination to the rightful owner.' [Citations omitted.]" 302 Kan. at 410-11. Under K.S.A. 60-503, a party may claim adverse possession either (a) under a claim knowingly adverse or (b) through occupancy under a belief of ownership. *Chesbro v. Board of County Commissioners of Douglas County*, 39 Kan. App. 2d 954, 960, 186 P.3d 829 (2008). Here, the only dispute is whether the Spencers presented sufficient evidence of a good faith belief of ownership to allow their adverse possession claim to go to the jury.

At the jury trial, Walter Spencer testified that when he bought the East parcel in 1988, there was fence on the west side of the property that did not block the driveway.

20

According to Spencer, he put in the new fence in 1990 that was "[j]ust a few inches off the original corner post that had been there for 80 to 100 years." He also testified that he believed the corner posts were the original survey markers for the four corners of the property. Likewise, Spencer testified that he installed the new fence just inches inside the property line "to make sure the property line was correct."

Further, Spencer testified that he believed that the existing fence was on the boundary line of the property when he bought it in 1988. He explained that he believed he owned all the property up to the fence line and used it as if it were his own. Spencer also pointed to the aerial photographs as evidence that he used "every square inch of that backyard for storage."

Even though Spencer expressly testified that he believed that all the property inside the fence belonged to him, the Zieglers point to Spencer's testimony that he did not rely on a survey before he built his fence. In addition, they point to his testimony that he believed the surveyor was wrong. Certainly, it was appropriate for the Zieglers to point to this testimony during closing argument to dispute the Spencers' adverse possession claim, but we do not find that it was sufficient to take resolution of the claim out of the hands of the jury.

We agree with the district court that the "threshold requirements" to submit an adverse possession claim to the jury were met. Ultimately, it was the jury's role to determine the weight to be given to Spencer's testimony and whether he had established a good faith belief of ownership. Thus, we find that the district court did not err in denying the Zieglers' motion for judgment as a matter of law.

21

*Tort of Outrage*

Finally, the Zieglers contend that the district court erred in submitting the Spencers' tort of outrage, or intentional infliction of emotional distress, claim to the jury. They again frame this issue as whether the district court erred in denying its motion for judgment as a matter of law. As stated above, our review of a district court's denial of a motion for judgment as a matter of law is de novo and—in reviewing the record on appeal—we must determine "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.' [Citation omitted.]" *Siruta*, 301 Kan. at 766.

We must resolve all of the facts and inferences that may reasonably stem from the evidence in favor of the Spencers who are parties against whom the ruling was sought. Once again, a motion for judgment as a matter of law should be denied if reasonable minds could reach different conclusions based on the evidence. On appeal, we apply a similar analysis. *Dawson*, 309 Kan. at 454.

The tort of outrage is also known as the tort of intentional infliction of emotional distress. *Hallam v. Mercy Health Center of Manhattan, Inc*., 278 Kan. 339, 340, 97 P.3d 492 (2004). To prevail, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the alleged emotional or mental distress; and (4) the emotional or mental distress was extreme and severe. *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024 (1991). Here, the jury was instructed accordingly, and the Zieglers do not challenge the instruction given by the district court.

The Zieglers argue that Walter Spencer failed to show a causal connection between their conduct and the alleged mental distress. A review of the record on appeal

22

reveals that Spencer—who was 78 years old at the time of the jury trial—testified as follows regarding harassment he allegedly received from the Zieglers:

> "Q. Has this harassment over the last two years caused you any ill effects?
> "A. Yes.
> "Q. Has it caused you any physical problems?
> "A. Yes.
> "Q. What kind of problems have you been having because of this?
> "A. Okay. I have went to the VA numerous times, and I don't know what you call them now, been about eight or 10 different types of medication, as well as one drug that is for anxiety to try to keep me going straight, to keep my mind going in the right direction.
> "Q. Has it affected your blood pressure or anything at all?
> "A. Yes, big-time. I've been to the VA many times. I'm on controlled substances and everything else to keep me going straight."

In *Yount v. Deibert*, 282 Kan. 619, 628, 147 P. 3d 1065 (2006) (quoting Prosser & Keeton on Torts § 41, pp. 269-70 [5th ed. 1984]), our Supreme Court set forth the burden of proof on causation:

> "'The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the possibilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'"

In this case, we agree that Spencer's testimony was not particularly strong regarding the medical conditions he allegedly suffered due to the harassment. But he did testify that the harassment caused him both "ill effects" and "physical problems" including "anxiety." Spencer also testified that he "went to the VA numerous times" and that he was prescribed medication for the anxiety. He added that the harassment had a "big-time" impact on his blood pressure.

23

Reviewing the evidence and the reasonable inferences that could be drawn from the evidence, we find that Spencer testified as to more than a "mere possibility" that the harassment he endured caused him mental or emotional distress. Again, the Zieglers' argument goes largely to the weight of the evidence, and it is the jury's duty to weigh the evidence. Consequently, we do not find that the district court erred in denying the Zieglers' motion for judgment as a matter of law and appropriately allowed the tort of outrage claim to go to the jury.

Affirmed.